ELLA D. HARPER, Admx., Defendant in Error, *vs.* THE
OWEN H. FAY LIVERY COMPANY, Plaintiff in Error.

*Opinion filed June 16, 1914—Rehearing denied October 7, 1914.*

1. NEGLIGENCE—*fact that carriage was let for hire need not be
proved by direct evidence.* In an action against a livery company
for damages for an injury to a person riding in the defendant's
carriage it is necessary to allege and prove that the carriage was
let for hire, but it is not essential that the proof of that fact be by
direct evidence.

2. SAME—*what raises presumption that the carriage was let for
hire.* Proof that the defendant was engaged in the general livery
business, letting out carriages and horses for hire; that the car-
riage in which the deceased was riding, together with the team
drawing it, belonged to the defendant, and that the driver was in
the employ of the defendant and had left the defendant's place of
business with the team and carriage and driven to a certain place,
where the deceased and his companions entered the carriage and
were taken to a cemetery with a funeral procession, raises a pre-
sumption that the carriage was let for hire, and such presumption
will prevail until the contrary is proven by the defendant.

3. SAME—*livery company is liable for injury due to negligence
of its driver.* The duty of a livery company to a passenger is not
fully discharged by exercising ordinary care to furnish a reason-
ably safe carriage, team and harness and a reasonably competent
and careful driver, and it is liable for an injury to the passenger
which would not have occurred but for negligence of the driver.

COOKE, J., CARTWRIGHT, C. J., and DUNN, J., dissenting.

WRIT OF ERROR to the Branch "B" Appellate Court for
the First District;—heard in that court on appeal from the
Superior Court of Cook county; the Hon. HOMER ABBOTT,
Judge, presiding.

WILLIAM D. MUNHALL, for plaintiff in error.

WILLIAM B. JARVIS, for defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The defendant in error, Ella D. Harper, as administra-
trix of the estate of Henry Harper, Jr., deceased, brought
suit against the plaintiff in error, the Owen H. Fay Liv-

ery Company, and the receivers of certain railroad companies, to recover damages for the death of her intestate, said Henry Harper, Jr., caused, as alleged, by the neglect of said defendants and their servants. The declaration, among other things, charges that said Owen H. Fay Livery Company was in the business of conducting a livery stable and providing and letting for hire drivers, vehicles and horses for such of the public as might engage the same of the said company, for the purpose of conveying persons to such places as they might wish to go; that on January 15, 1909, said livery company did let for hire a certain carriage and team of horses, together with the driver thereof, to drive and carry said Harper and others over the streets in said county of Cook to and from funeral services, and did, by means of said carriage and team and said driver, convey said Harper and others on and over Douglas boulevard and upon the crossing of the Chicago Terminal Transfer Railroad Company, and that the said livery company, acting by its said servants, so negligently and carelessly drove said team of horses and carriage that the said carriage collided with a train of the Chicago and Great Western Railway Company being operated on said track; that by such collision or striking, the tongue of said carriage was broken, said team became frightened and uncontrollable and ran along the right of way of said railroad company; that said Harper, while in the exercise of ordinary care and caution for his own safety, was put in danger, and having reasonable cause to believe, and believing, that he was in imminent peril, alighted or sprang from said carriage, and in so doing was struck by a car or some portion thereof, which resulted from his efforts to escape said danger, and thereby received injuries from which, on the 19th day of January, 1909, he died. The defendants, including plaintiff in error, pleaded the general issue. A trial was had by jury, which returned a verdict finding the defendant the Owen H. Fay Livery Company guilty and as-

sessing plaintiff's damages at the sum of $6500, and finding the other defendants not guilty. Motions for a new trial and in arrest of judgment were overruled and judgment was entered on the verdict. The Owen H. Fay Livery Company prayed an appeal to the Appellate Court for the First District, which affirmed the judgment of the superior court, and the case has been brought to this court by *certiorari.*

At the close of the evidence plaintiff in error offered a peremptory instruction directing the jury to return a verdict in its favor, which the court refused. The principal error assigned is the holding of the Appellate Court that the defendant in error's intestate was a passenger for hire. The other errors assigned are for not reversing said case because of the refusal of the peremptory instruction, which was based on the ground that there was no evidence to show that said Harper was a passenger for hire, and other instructions drawn on the same theory, which were refused by the trial court.

It appears from the evidence that the team and carriage in which defendant in error's intestate was riding at the time of his death were owned by the plaintiff in error, and the driver of the carriage, Andrew Johnson, was in its employ, and that the plaintiff in error conducts a general livery business, letting carriages and horses for hire. The driver started out from the place of business of the plaintiff in error company with the carriage and team about noon and drove to Market and Jackson streets and from there to Taylor street, near Roby street. He had in the carriage, M. F. Burke, H. A. Hohenadel, W. J. Kruse and Harper. He took them from Market street to the funeral and from there to the cemetery. On returning from the cemetery the carriage was stopped at a road house and other places by direction of the occupants. About 5:30 o'clock in the afternoon, pursuant to the direction of the passengers, the driver was driving said carriage south along

Douglas boulevard, which at the railroad crossing in ques-
tion is a wide street, with a roadway on each side. As
the carriage approached the railroad crossing a train of
cars was being switched from east to west across Douglas
boulevard. There are three railroad tracks at this place
and the train was on the middle track. The driver saw
the train when he was almost on the track and reined in
his horses too late, so that the engine struck the near horse
in the face. The driver tried to turn his horses to the left.
The horses became frightened and the pole of the carriage
struck the side of the third freight car from the engine and
was broken. The horses got beyond the driver's control,
wheeled to the right and ran down the railroad right of
way towards the west. The occupants of the carriage,
when the collision occurred, got out as best they could,
and Harper, in alighting from the carriage, was apparently
struck on the head by some portion of one of the cars of
the train and received injuries from which he died a few
days later.

The principal contention of plaintiff in error is that
there was no evidence of the hiring of the carriage by the
deceased. There is no direct evidence as to who hired the
carriage or whether it was engaged for hire from the plain-
tiff in error company. Defendant in error insists that un-
der the circumstances a hiring will be presumed from the
facts proven that at that time the plaintiff in error was
engaged in the general livery business, letting out horses
and carriages for hire, and from the further fact, which is
also proven, that the carriage in which Harper was riding,
and the team drawing the same, belonged to the plaintiff in
error company and that the driver was in the employ of
that company; that the driver started with the team and
carriage from the place of business of plaintiff in error
and drove from there to the place where he met Harper
and his three companions, who entered the carriage and
were driven from there to the place where the funeral ser-

vices were held and from there to the cemetery, and that the accident happened on the return trip from the cemetery, while the carriage was being driven as directed by Harper and the other occupants. That plaintiff in error let for hire the carriage, horses and driver to convey Harper was a necessary averment in the declaration, for if the use of the carriage was gratuitous or without the knowledge or consent of plaintiff in error, then it would not owe the deceased the duty to carry and convey him safely, as charged in the declaration. But such fact need not be shown by direct proof. It may be established by proof of such facts and circumstances as would permit the plaintiff in error to maintain an action for the use or hire of its carriage. The presumption of law always is that the bailment is one for the mutual benefit of both parties or for hire; (5 Cyc. 175; 3 Am. & Eng. Ency. of Law,—2d ed.— 759; Schouler on Bailments, sec. 29; *Lemon* v. *Chanslor,* 68 Mo. 340;) and where the rate of compensation is not fixed or agreed upon, the law will imply a promise on the part of the party for whom the services were rendered to pay what the services were reasonably worth. (3 Am. & Eng. Ency. of Law, *supra.*) The evidence in this record was sufficient to have allowed plaintiff in error to maintain an action against the estate of the deceased for the hire of its carriage. Such an action would be based upon the presumption that the use of the carriage was for the benefit or pleasure of deceased and that he contracted to pay what the use of the carriage was reasonably worth. This presumption arises from the facts proven and applies to both parties alike. To say that the presumption is available for one and not available for the other would be to destroy that equality of right which the law must preserve. Nor could it consistently be said that upon the proof of these facts it will be presumed the use of the carriage by the deceased was for hire for which his estate would be liable, and at the same time that on the same facts it will be pre-

sumed the use of the carriage by the deceased was gratuitous or without the knowledge or consent of plaintiff in error, and hence that it is not liable for the negligence of its servant. If the use of the carriage by deceased was gratuitous or without the knowledge or consent of plaintiff in error, proof of such facts would constitute a perfect defense to the action, and such proof was entirely in the knowledge and possession of plaintiff in error and not in the possession of defendant in error, whose intestate was in his grave, and in the absence of such proof on the part of plaintiff in error the presumption of law which arises from the facts proven must be allowed to prevail. (*Great Western Railroad Co.* v. *Bacon,* 30 Ill. 347; *Germania Fire Ins. Co.* v. *Klewer,* 129 id. 599.) To sustain the contention of plaintiff in error would be to preclude a recovery altogether in all cases like the present, where the one who hires the carriage, and who, alone, could prove that fact on his part, is killed. Nor can the opposite holding work any hardship when the proof, if it exists, remains altogether in the possession of the adverse party. "Where, for any reason, the evidence to prove a fact is chiefly, if not entirely, within the control of the adverse party, it has been held that the burden of proof,—meaning the burden of evidence,—is in the party who knows, or has special opportunity of knowing, the fact." (16 Cyc. 937.) "Similar in result to the effect of presumption is the effect of peculiar knowledge possessed by one party of the evidentiary facts, which the other party claims would, if brought forward, tend to sustain the claim of the latter. In such case, if the party possessed of such knowledge fails to bring forward the facts which it is shown can be produced by him, alone, a presumption arises in favor of his adversary's claim." (5 Am. & Eng. Ency. of Law, 41; *Great Western Railroad Co.* v. *Bacon, supra.*) We are constrained to hold that the circumstances surrounding the use of the carriage of plaintiff in error as shown by the evidence in this

·case raise a presumption that such use was for hire, which presumption remains until the contrary is proven by the adverse party, who has the knowledge as to whether such use was for hire or gratuitous.

Plaintiff in error further contends that the only duty of a liveryman, in cases like the one at bar, is to exercise ordinary care in furnishing a reasonably safe carriage, horses and harness and a reasonably competent and careful driver, and after so doing he has done his full duty and is not liable if an accident should occur. This court has held in the case of *Johnson* v. *Coey*, 237 Ill. 88, that the owner of an automobile for hire who furnishes the driver is liable for an injury to a passenger which would not have happened but for the negligence of the driver, and that it was a question for the jury to determine, from the circumstances surrounding the accident, whether the driver was ·negligent. In the case at bar the jury by its verdict found ·that the driver was negligent, and we cannot say that such finding was against the weight of the evidence. The employer, therefore, was liable.

Finding no error in the record sufficient to justify a reversal of this case the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

COOKE, J., CARTWRIGHT, C. J., and DUNN, J., dissenting:

The only evidence as to how Harper came to be in the ·carriage is the testimony of the driver that he started with the carriage from plaintiff in error's place of business at 53 Plymouth place, in the city of Chicago, and drove to ·Market and Johnson streets, where Harper and three companions entered the carriage; that they then drove to the ·place where the funeral services were to be held and from ·there to the cemetery, and that the accident occurred on ·the return trip from the cemetery. That plaintiff in error ·let for hire the carriage, horses and driver to convey Har-

per was a necessary averment in the declaration, and it was incumbent upon defendant in error to prove this averment. Unless such proof was made it was not shown that plaintiff in error owed the deceased the duty declared upon. The profitable relations expressed in the words "for hire" must be shown either by direct proof or by proof of such facts that the presumption of hiring is necessary or inevitable. Such facts were not proven. Plaintiff in error was not a common carrier but was a private carrier of passengers for hire. Under the facts shown the use of this carriage may have been for hire, gratuitous or without the knowledge or consent of plaintiff in error. If the use of the carriage was gratuitous or without the knowledge and consent of plaintiff in error, then it did not owe deceased the duty declared upon.

The majority opinion states that the evidence presented would have been sufficient to sustain a claim by plaintiff in error against the estate of the deceased for the hire of the carriage, and that therefore it is sufficient upon which to base the presumption that the carriage was hired for the benefit of the deceased. The evidence would, no doubt, be sufficient upon which to sustain a claim against the estate of the deceased, as it appears that he used the conveyance. Plaintiff in error was entitled to compensation for the use of the carriage, and could recover compensation for such use against the estate of the deceased without any proof of a hiring. He may have obtained the carriage by any one of the many means which he might have employed to obtain it without the knowledge or consent of the plaintiff in error, but it does not necessarily follow that because the circumstances are such that plaintiff in error could enforce a claim for compensation for the use of the carriage, that the circumstances are also such as would make plaintiff in error liable for injuries sustained through the negligence of the driver. The proof was insufficient to make out a *prima facie* case and the peremptory instruction should have been given.