Rose Stenberg, administratrix of estate of Theodore Stenberg, appellant, v. Blanche Buckley, administratrix of estate of Jack Buckley, appellee.

No. 48414.

(Reported in 61 N. W. 2d 452)

DECEMBER 15, 1953.

REHEARING DENIED MARCH 12, 1954.

Rudolph & Rudolph, of Atlantic, and White & Bruner, of Carroll, for appellant.

Jones, Cambridge & Carl, of Atlantic, for appellee.

THOMPSON, J.—Plaintiff's petition was in two counts. The first alleged the death of her decedent, Theodore Stenberg, resulting from injuries sustained while riding as a guest in an automobile owned and driven by defendant's decedent, Jack Buckley, and alleged acts of recklessness and intoxication on the part of Buckley. The second count set up facts claimed to show Theodore Stenberg was not a guest under the meaning of the Iowa "automobile guest statute", and alleged the death of Theodore Stenberg resulted from certain specified negligences of Jack Buckley. At the close of plaintiff's evidence the trial court sustained defendant's motion for peremptory verdict and entered judgment for defendant. We shall hereinafter, for the sake of brevity, refer to Theodore Stenberg as the plaintiff and Jack Buckley as the defendant.

On March 15, 1951, both plaintiff and defendant were members of the Atlantic lodge of the Loyal Order of Moose. Plaintiff was employed by Sears-Roebuck & Company. Defendant owned and operated a restaurant, known as the Iowa Café, in Atlantic. Defendant was chairman of the food committee of the lodge and plaintiff was a member of the same committee. The lodge hall was about one mile west of Atlantic on U. S. Highway No. 6. A "stag" party for the lodge members was planned for the evening of March 15 and defendant was to furnish the food and serve it. During the day his wife, as cook at the restaurant, prepared two turkeys "and the dressings and the trimmings" to be served. The quotation is from defendant's deposition. The turkeys weighed forty-four pounds. Defendant says that during the day he made arrangements for plaintiff to go out with him "on this committee work." Mrs. Stenberg was "second cook" in defendant's café. Plaintiff, called by defendant, helped load the food, together with knives and other utensils needed in serving the meal, into defendant's 1950 Chevrolet automobile, and the two men rode to the clubhouse, with defendant driving. This was about 6:15 in the evening. Arriving there they unloaded the car and took the food and utensils into the kitchen.

Defendant said there were between fifty and sixty members of the lodge present that evening, "maybe more." Defendant carved the turkeys and plaintiff and some other members helped dish out the meat and accessories. They finished serving the meal and cleaning up afterwards shortly after 9:30. Soon after 11 defendant prepared sandwiches and made coffee for the group. Plaintiff did not help with this. At 12:25 a. m. defendant summoned plaintiff to go home. They loaded the defendant's car with "some of the stuff", presumably the utensils and leftovers, and started home. Defendant says he drove at twenty-five miles per hour all the way. The highway and the city streets were icy and as they reached the driveway of a filling station located on the southwest corner of the intersection of West Seventh and Laurel Streets, in Atlantic, the defendant lost control of the car. It veered to the right, the two right wheels apparently climbing a snowbank at the curb in front of the filling station, then shot across the intersection, again

climbed a snowbank at the curb across the street with the two right wheels, and after progressing 199 feet crashed into a tree in the parking. Stenberg was killed almost instantly; defendant suffered serious injuries. He died on May 14, 1952; whether from the hurts sustained in the accident is not stated, and in any event it is immaterial to the issues before us. His administratrix has been substituted as defendant.

I. The plaintiff-appellant assigns three errors, but the third one deals with the question of intoxication, and since counsel in oral argument conceded he had little confidence in this assignment and a review of the record shows it has no merit, we shall not consider it further. The first assignment is that the court was in error in holding plaintiff was a guest while riding in defendant's car, within the meaning of the "automobile guest statute." The second is that the court was in error in holding plaintiff, if he was a guest, had failed to show recklessness sufficient to generate a jury question.

We address ourselves first to the question raised by the first assignment of error and by Count II of the petition. This count contained the following allegation: "* * * plaintiff's decedent * * * and the defendant * * * were both members of the Atlantic, Iowa, Moose Lodge, and as such members, and for the benefit of said lodge, were upon said date engaged in the common enterprise of preparing and serving food to be consumed by the members of said lodge during the evening and night of said day, and that their duties in that capacity consisted of preparing and transferring said food from the defendant's café in Atlantic, Iowa, to the Moose Lodge at the west edge of Atlantic, Iowa, serving said food and returning the equipment used in connection with its preparation and service to the defendant's café * * *. *That the said Jack Buckley received compensation for purchasing and preparing said food.*" (Italics ours.)

Because of what we conceive to be the legal situation governing the determination of whether a person riding in a motor vehicle with the driver is or is not a guest within the meaning of the statute, we shall first consider that part of Count II which we have italicized. It is contended by plaintiff that, while there

is no direct evidence of the arrangement between Buckley and the lodge, the situation requires a presumption, or inference of fact, that he was to be paid. This the defendant denies. The trial court ruled with the defendant, at least to the extent of holding it was incumbent upon plaintiff to show recklessness, and plaintiff had failed to meet this burden. This was of course a holding plaintiff, under the evidence adduced, was a guest as a matter of law.

The question of whether Buckley was furnishing the food without promise or expectation of pay, or was in fact to be compensated for it, is of great importance. It is true there is no witness who says directly the lodge or anyone else was to pay him; so if there is no presumption or inference from what the record does show, the fact is not proven. What are commonly known as "presumptions of fact" are really not presumptions at all, but inferences. "* * * a 'presumption of fact', in the loose sense, is merely an improper term for the rational potency, or probative value, of the evidentiary fact * * *." IX Wigmore on Evidence, Third Ed., 288, section 2491. Greenleaf on Evidence, 144, section 44, says: "They are, in truth, but mere arguments, * * *" and "* * * depend upon their own natural force and efficacy in generating belief or conviction in the mind * * *."

These inferences do not affect the duty of either party to produce evidence, except as each party is desirous of showing whatever he can to aid his case. Whether an inference of fact, a "presumption of fact in the loose sense" as Dean Wigmore describes it, aids a litigant, depends upon whether the common knowledge and experience of men, as applied to facts shown, lead to the belief that ordinarily and usually further facts or consequences follow. Such an inference is a reasoning process, an inferring from other facts which appear in evidence. The presumption of innocence which clothes a defendant in a criminal case is one raised by the law, and is a real presumption; but when it is said, for instance, that when a certain state of things or affairs is shown to have existed at a given time, its continuance is presumed, what is really meant is that the showing of the existence at a specified time is admissible as evi-

dence of the continued existence. It is of course a rebuttable inference. Whether any inference is to be drawn from a given set of facts depends upon whether the state of affairs to be inferred usually and generally follows from the facts shown.

We now turn to the evidence in the case under consideration. The defendant-Buckley was an owner and operator of a restaurant business. He was also chairman of the food committee of the Moose lodge. He had agreed to furnish all the food for a turkey dinner at the lodge rooms on the evening of March 15. This included not only the food itself, but its preparation and serving. Two turkeys, with many other items of food, were required. It was necessary also to send many utensils from the café to the clubhouse. Some fifty to sixty men, perhaps more, were fed. The utensils at least, and perhaps any items of food unconsumed, were to be returned to the restaurant. The defendant summoned the plaintiff, who was also a member of the food committee, to aid him in transporting the food and utensils to the lodge rooms, to prepare and serve it, and to help load the car for the return trip.

From this state of facts, all shown in the record, may an inference of fact be drawn as to the arrangement between the defendant and the Moose lodge in regard to compensation or lack of it? Does the common experience of men as to this situation point so clearly to the probabilities that any inference may be drawn? We think it does.

The defendant was in the business of selling food in his café. The cost of a dinner for the number of men who attended the Moose party on the night of March 15, 1951, would be considerable. Not only was a dinner with turkey as the piece de resistance supplied, but sandwiches were served later in the evening. The high cost of food during the past several years is common knowledge. We think the evidence admitted in the case adequate to prove, at least until rebutted, that the defendant was to be compensated for the food which he furnished; it does not accord with reality and experience that he was furnishing it gratis as a part of his duties as chairman of the food committee. The inference of compensation is in accord with known practice in such situations. Courts should at least know what everyone else knows.

The plaintiff cites, in this connection, Harper v. Owen H. Fay Livery Co., 264 Ill. 459, 106 N.E. 273. Here the Illinois Supreme Court said it was presumed a person rendering services or supplying goods in connection with his business or calling did so for a compensation to be paid to him. The defendant points out the emphasis placed by the Illinois court upon the fact the plaintiff's intestate, who was killed while riding in one of defendant's carriages, was of course precluded from testifying as to the arrangement, and the knowledge of the hiring was exclusively in the defendant. We think the court there placed too much stress on the superior position of the defendant as to knowledge of the true arrangement between the parties. As the defendant says, citing 31 C. J. S., Evidence, 724, section 114:

*"Presumptions must be based on some necessity,* and the court will not go into the domain of presumptions where direct proof can be obtained."

Defendant likewise gives us this quotation from In re Estate of Bryant, 3 Cal.2d 58, 68, 43 P.2d 529, 533: "The application of bare legal presumptions is only indulged in cases where there is a total lack of evidence bearing on the question at issue."

It may be observed in the case at bar that defendant had actual knowledge of this agreement with the lodge as to compensation for the food, while the plaintiff had none. But we think the point immaterial since we are not here dealing with a true presumption, but with an inference of fact; or, as Wigmore puts it, whether the evidence is on the whole sufficient to go to the jury. IX Wigmore on Evidence, Third Ed., 460, section 2529. True presumptions arise usually from necessity, and we think the Illinois court, in Harper v. Fay Livery Co., supra, in stressing the fact defendant had exclusive knowledge whether its carriage was let to the decedent for hire, overlooked or did not understand it was dealing with an inference of fact rather than a presumption of law. If the inference arises naturally from data founded upon common experience and knowledge of men it is a deduction permitted by reason, while a true presumption is a deduction directed to be drawn by law. 31 C. J. S.,

Evidence, 725, section 115. The evidence which permits the inference to be drawn is itself evidence of the fact or situation inferred. So in the Harper case, supra, evidence of the fact the defendant was in the business of furnishing horses and carriages for hire, and the decedent was riding in one of its vehicles, driven by defendant's employee, warranted the inference the decedent had hired the conveyance. It was, in fact, evidence of such hiring, and it was not material whether defendant had superior means of knowing the terms of the contract. It was not a presumption of law raised by necessity, but an inference coming from the knowledge and experience of men that liverymen ordinarily let out their conveyances only for pay. The citations from 31 C. J. S., Evidence, 724, section 114, and In re Estate of Bryant, both supra, give the correct rule when we are dealing with true presumptions; "bare legal presumptions", as the Bryant case puts it. They are not in point here.

In the instant case we have the testimony of the defendant that he was in the restaurant business in Atlantic; was chairman of the food committee of the Moose lodge; the lodge was having a "men's club" that evening; he was supposed to serve the food. He says further he made arrangements during the day for the plaintiff to go out with him "on this committee work"; the plaintiff was also a member of the committee. Plaintiff helped load the two turkeys, already cooked at defendant's café, with the dressing, celery, olives, cheese, butter, bread, utensils, and "everything that goes with a feed like that" into the defendant's car. Arriving at the lodge rooms at about 6:30 p. m. defendant describes his activity, and that of plaintiff, thus:

"We stopped and unloaded and brought it into the kitchen, and we changed our clothes—taking off our heavy clothes; and then went to the kitchen and we had to butter the sandwiches —the bread for the sandwiches and cut them in two, and made coffee, and turned on one of the burners to put one of the roasters of the turkey on to keep it warm until it was served, and then we had to get out the dishes and the knives and forks and get all ready for the serving of the food."

It was after 7:30 when they were ready to serve the meal,

and the plaintiff and others assisted in this. Later, plaintiff helped load the car for the return trip.

Ordinary knowledge and experience tell us that in such a situation the defendant was not furnishing the food for this assemblage of fifty to sixty men, or more, gratis. He was in the business of selling food, and it is common knowledge that the chairman of the food committee of a lodge, church, or other organization is not required or expected to furnish expensive meals to the membership without compensation. On this basis, such chairmen would be difficult to find. It is a fair inference Buckley was to be paid for the food he supplied; in fact, evidence of the facts above set forth is in itself evidence of an arrangement for pay. It is, of course, rebuttable, as is most evidence. But until it is rebutted it stands as proof defendant was to be compensated.

II. We turn then to the next question: With substantial and material evidence defendant was engaged in furnishing prepared food from his restaurant for compensation, was plaintiff a "passenger or person riding in said motor vehicle as a guest and not for hire" within the meaning of the Iowa automobile "guest statute?" We set out this statute, section 321.494, Code of 1950, herewith:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

Many cases have said a person riding in an automobile as a passenger is not necessarily a guest or passenger by invitation or passenger for hire, within the meaning of section 321.494, supra. Perhaps the leading case in Iowa on this point is Knutson v. Lurie, 217 Iowa 192, 195, 251 N.W. 147, 149. Here a clear and sound statement by Justice Kindig, for the court, laid down the governing principle in this language:

"There are, in fact, a multitude of persons riding in cars daily who are not guests, passengers by mere invitation, or

passengers for hire within the legal meaning of that term. A person riding in an automobile may be there because of the relationship of master and servant existing between him and the owner. In other instances, the rider in an automobile may be there (without the relationship of master and servant) for the definite and tangible benefit of the owner or operator; or such person may be in the automobile * * * for the mutual, definite, and tangible benefit of the owner or operator on the one hand, and of himself on the other."

This statement has been quoted with approval in Porter v. Decker, 222 Iowa 1109, 270 N.W. 897, and Wittrock v. Newcom, 224 Iowa 925, 277 N.W. 286, and applied not only in those cases but in Doherty v. Edwards, 227 Iowa 1264, 1268, 290 N.W. 672, Mitchell v. Heaton, 231 Iowa 269, 1 N.W.2d 284, 138 A. L. R. 832, and others. And, see 4 Blashfield, Permanent Edition, Automobile Law and Practice, 79, 80, 81, section 2292.

We think the conclusion warranted that plaintiff's case here showed the trip to and from the lodge room was made for the definite and tangible benefit of the owner and operator of the car, the defendant-Buckley. We have pointed out the evidence makes at least a prima-facie case he was furnishing food for compensation, which was his business. Whether he was paid for the food only, or for serving it as well, is not material. It was necessary for him to transport the food to the clubrooms in order to receive his compensation. Nor is it material whether he made a profit on the sale; he was carrying on his business of marketing prepared food, and a merchant is no less engaged in business—although perhaps he will not be for so long—when he sells at a loss instead of a gain. The holding could also probably be put on the ground the trip was for the mutual benefit of the owner and operator of the car and of the plaintiff. True, the plaintiff had no monetary reward, but both men were members of the food committee of the lodge and had certain duties to perform as such. The benefit to defendant came from the sale of food as well as the performance of his lodge duties; to plaintiff, from the latter alone.

The case, at this point, is much like Thuente v. Hart Motors,

234 Iowa 1294, 15 N.W.2d 622, where the parties were engaged in collecting scrap as a patriotic enterprise during World War II. Plaintiff therein had volunteered to aid and was riding in a truck furnished gratis by defendant. We held the trip was not "a social or gratuitous one" such as is contemplated by section 321.494. The plaintiff and defendant were engaged in a patriotic and community service. While furnishing the food and serving it for a lodge dinner is not a patriotic project, probably not even a community endeavor, it does fall within the scope of something done for "the mutual, definite, and tangible benefit" of the operator of the car and the passenger. The driver was benefited by the sale of his food, and by performance of his function as chairman of the committee; the passenger by the opportunity to carry out his own duties as a member of the committee. Count II of plaintiff's petition pleaded the common enterprise, and also that the defendant received compensation for "purchasing and preparing" the food. Whether we say the trip was for the "definite and tangible benefit" of the owner and operator of the automobile, or for the "mutual, definite, and tangible benefit" of both the owner-operator and the passenger, the situation falls within the rule expressed in Knutson v. Lurie, supra. Cases such as Brown v. Branch, 175 Va. 382, 9 S.E.2d 285, in which the social element is the dominant motive, are not in point.

The trial court properly directed a verdict for the defendant upon Count I of the petition. If plaintiff had been a guest, we agree with the court there was insufficient evidence of recklessness or intoxication.

III. The second division of defendant's motion to direct contained the attack on Division II of the petition. In paragraph 5 defendant alleged insufficiency of the evidence to support the specifications of negligence made by the plaintiff. The court in granting the motion to direct did not pass upon this paragraph, but said it placed its ruling on "certain legal rules and the necessity in this particular case of the plaintiff's showing recklessness, which is something in excess of negligence, or of showing intoxication." We have indicated our disagreement with this ruling which, in effect, held as a matter of law plain-

tiff was a guest in defendant's car. But if the record shows any proper ground for upholding the ruling of the court, even though not the one upon which it acted, we should affirm. In re Will of Smith, 245 Iowa 38, 60 N.W.2d 866, and cases cited. It therefore becomes necessary to examine the record to determine, under paragraph 5 above referred to, if there was such a lack of evidence to support the pleaded negligences as to justify a peremptory verdict for the defendant. The point is not argued by either party, but we find at least some indication of doubt in the minds of defendant's counsel as to its validity in the first division of their motion to direct where, addressing themselves to the issue of recklessness, they say: "That if submitted to the jury, the jury could find only inadvertence, momentary thoughtlessness, error in judgment, careless conduct, or perhaps negligence, none of which are sufficient for recklessness."

 Perhaps it is unfair to counsel to hold them too strictly to this as an admission. In any event we think the evidence was sufficient to require submission of the issue to the jury. Defendant says he was driving at twenty-five miles per hour; and while this would ordinarily be an innocuous speed, under the circumstances prevailing here the jury could have found it excessive. The highway was glazed with ice; the defendant himself says: "It was ice." He also says there had been sleet and fog which had covered his windshield but he had waited for the heater to clear it off so that he was able to see the highway. But when he started driving there was still trouble. "Only the fog. Was hard to see through the fog." The evidence shows these things, plus the fact the defendant's car progressed 199 feet from the point where he testified it first skidded on ice; the two right wheels went up on a snowbank on the parking which was from one and one-half to three feet high, and it crashed into a tree in the parking with force sufficient to cause fatal injuries to the plaintiff, serious hurt to defendant, and much damage to the automobile. There was sufficient evidence to submit to the jury in support of the specifications of speed and lack of control.—Reversed and remanded.

All JUSTICES concur.