Matthias, J.
The controversy presented concerns plaintiff’s evidence as to one issue of his case — whether the deputy sheriff was acting within the scope of his capacity as an officer of the law at the time of the incident. Plaintiff, of course, in order to recover from the sheriff, has the burden of proving that the deputy was.
The facts regarding this issue which were proved at trial by plaintiff are, in the words of the Court of Appeals, as follows :
“* * * Joe P. Ayers was employed as an electrician by Goodyear Aircraft Corporation. * * * Jerome A. McCarty was employed by Goodyear Aircraft Corporation as a guard, whose duty it was to see that unauthorized persons did not go on the premises of the corporation, or to places within the corporation, except upon proper identification.
“Mr. McCarty, as a plant guard, was also a deputy sheriff of Summit County. He wore a distinctive blue uniform and a badge, and carried a revolver.
“On April 22, 1954, Joe P. Ayers, in the course of his work, went to the hangar to inspect some lights.
“About a week before that date, he had received a call to proceed to the hangar to balance the circuits feeding the lights installed for the employees of Goodyear who were constructing a blimp for the U. S. Navy. Some of the lights were out, and Ayers had to go on a ear, the undercarriage of the blimp. In compliance with requirements, he registered at the nearby police booth and exchanged the regular Goodyear Aircraft employee’s *141 badge for a special ‘N’ (Navy) badge before proceeding into the car to remedy the trouble, since snch territory was classified as a restricted, confidential and secret area under United States Navy regulations.
‘ ‘ On April 22, upon a similar call, Ayers again went to the hangar. When he arrived there, he walked past the police booth and approached the blimp to observe the lights on the ‘car’ and the wiring leading from the ground to the ‘car.’ He did not register, nor did he exchange his regular badge for the special ‘N’ badge. The lights were on and there was no necessity for him to enter the ‘car’ of the blimp.
“While standing near the small building, or shanty, where the plant guards kept identification badges, Ayers was approached from the rear by Jerome A. McCarty, who took a large screwdriver from a pouch which was strapped around Ayers’ waist. McCarty returned this tool to its pouch, then took Ayers by the arms and began pushing him backward. After being pushed back a few steps, Ayers resisted and began pushing McCarty; whereupon McCarty, by raising one of his knees, struck Ayers in the groin, causing Ayers certain injuries.”
There is, as stated by the Court of Appeals, a conflict of evidence regarding the possibility of plaintiff’s injury being the result of “horseplay.”
The trial court, at the request of plaintiff, charged the jury as follows:
“The court charges you as a matter of law that although Jerome A. McCarty was appointed a deputy sheriff upon application of Goodyear Aircraft Corporation and his salary was paid by such corporation, his acts will be presumed to have been performed in his capacity as such deputy sheriff, and anyone who claims that Jerome A. McCarty was not acting as a deputy sheriff must show affirmatively that such was the case, by overcoming such presumption by a preponderance of the evidence.”
In sustaining the motion for judgment notwithstanding the verdict, the court found that “reasonable minds may draw one conclusion only from the evidence * '* # that * # * Mr. McCarty’s wrongful act was committed in play and was private or personal in nature,” and that “such wrongful act was not done under color of * * * or by virtue of his office, as a deputy sheriff.”
*142 The plaintiff assigns as error the rendering of a judgment notwithstanding the verdict. This court said, in the second paragraph of the syllabus of McNees v. Cincinnati Street Ry. Co., 152 Ohio St., 269, 89 N. E. (2d), 138:
“Ordinarily, in order to sustain a motion for judgment notwithstanding a general verdict, the evidence received upon the trial and the facts established by admissions in the pleadings and in the record must be such that the court would have been required, upon a proper motion therefor, to direct a verdict for the party seeking such judgment.” (Emphasis added.)
And in Durham v. Warner Elevator Mfg. Co., ante, 31, this court said, in the first paragraph of the syllabus:
* * a motion to direct a verdict for one of the parties requires that the evidence be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court’s determination in disposing of such motion.” (Emphasis added.)
Thus, to sustain a motion for judgment notwithstanding the verdict, the court must view the evidence received upon the trial and the facts established by admissions in the pleadings and in the record in the light most favorable to him against whom the motion is directed, and decide that, upon all such evidence and facts,' reasonable minds could come to but one conclusion regarding a verdict. This test must now be applied to the situation at hand.
“Courts should at least know what everyone else knows.” Stenberg, Admx., v. Buckley, Admx., 245 Iowa, 622, 627, 61 N. W. (2d), 452. It is common knowledge that more often than not an encounter beginning as horseplay turns into an affray of a more serious nature as each of the participants attempts to outdo the other in the horseplay. Thus, the fact that Ayers sustained a serious injury does not of itself obviate the possibility of horseplay. However, considering the nature of this encounter, i. e., a uniformed guard on duty in a security area mutely pushing away a person who was at the time unauthorized to be within such area, and then, upon receiving slight resist- *143 anee in the form, of a return push, administering to the person a savage kick in the groin, we are unable to agree with the trial court that “ reasonable minds may draw one conclusion only from the evidence * * * that Mr. McCarty’s wrongful act was committed in play and was private and personal in nature. ’ ’ The kick in the groin in return for the slight provocation afforded by a return push is very susceptible to being interpreted as the type of disabling action an officer of the law might use to accomplish the immediate subjection of an individual who is the object of his oficial attention, rather than a blow given in horseplay.
Applying the test hereinbefore set out, the evidence adduced at the trial supports a conclusion that plaintiff was injured otherwise than by engaging in horseplay, and that reasonable minds could have so concluded. ..The granting of the defendants’ motion for judgment notwithstanding the verdict, therefore, was error.
We come now to the question raised by the contention that the written instruction, set out in full supra, read to the jury before argument and concerning the presumption that the acts of duly commissioned deputy sheriffs are performed in their capacity as such, was error.
This court has many times considered the place and function of presumptions in general and of various specific presumptions. See 12 West’s Ohio Digest, Evidence, Presumptions, keys 53 through 89.
A close scrutiny, however, discloses that this court has never spoken on the issue we feel to be determinative of the instant question, i. e., the place and position of a presumption in a case where a litigant introduces evidence concerning a fact which would, in the absence of evidence, be the subject of a recognized presumption in his favor.
This court has indicated that duly commissioned law enforcement officers who are hired and directed in their specific duties by a private person are public officers deriving their authority from the sovereign, whose acts, in the absence of evidence to the contrary, are presumed to have been performed in such capacity. See New York, Chicago & St. Louis Rd. Co. v. Fieback, 87 Ohio St., 254, 100 N. E., 889, 43 L. R. A, (N. S.), 1164, *144 and Pennsylvania Bd. Co. v. Deal, 116 Ohio St., 408, 156 N. E., 502.
The effect of those cases on the instant action is simply that, if plaintiff had introduced no evidence tending to prove that McCarty was acting in his official capacity at the time of the incident, then a presumption would arise that such was the case, which would help complete a prima facie case for plaintiff, and which would shift to defendants the burden of going forward with evidence tending to prove the contrary. It must be kept in mind that even under such circumstances, considering the whole case and all the evidence presented at trial, the burden of proving official capacity rests on the plaintiff.
In the instant action we do not reach that point where the Fiebach and Deal cases would enter our reasoning since “presumptions are indulged in only to supply facts.” “Presumptions must be based on some necessity. Courts will not go into the domain of presumptions where direct proof can be obtained.” 31 Corpus Juris Secundum, 723, 724, and cases cited.
In the case of Hanna v. McClave, 271 Mich., 133, 141, 260 N. W., 138, the court said:
“ ‘The presumption, however, exists only in the absence of evidence, and does not serve at all when the issue * * * is tried out upon evidence.’ ” (Emphasis added.) See, also, Patt v. Dilley, 273 Mich., 601, 263 N. W., 749.
In each of those cases the trial court was held to have committed error in charging the jury regarding a statutory presumption of negligence operating in favor of the plaintiff and against the defendant, where plaintiff had introduced evidence tending to prove negligence on the part of the defendant. The rationale of the decisions is that a presumption is dispositive solely where neither party introduces substantial credible evidence regarding the fact to be presumed. Conversely, when either party introduces substantial credible evidence tending to prove a fact which would otherwise be presumed, the presumption either never arises or it disappears. If, for example, the presumption operates in favor of the plaintiff and against the defendant, then it never arises if the plaintiff introduces evidence tending to prove it, i. e., plaintiff has no need for the aid of the presumption, or, if the plaintiff has sought the aid of the *145 presumption by nonproduction of evidence and the defendant introduces evidence of a substantial nature which at least counterbalances the presumption, then it disappears. See the opinion of Judge Zimmerman in the case of Brunny, Admx., v. Prudential Ins. Co. of America, 151 Ohio St., 86, 84 N. E. (2d), 504; and Carson v. Metropolitan Life Ins. Co., 165 Ohio St., 238, 135 N. E. (2d), 259.
On the other hand, an inference is a deduction of an ultimate fact from other proved facts, which proved facts, by virtue of the common experience of man, will support but not compel such deduction. A jury may attach probative value, or evi-dentiary weight, to such a deduction in the same manner and to the same extent it may accept, reject or attach probative value to positive testimony or direct evidence. See Fink v. New York Central Bd. Co., 144 Ohio St., 1, 56 N. E. (2d), 456; Glowacki, a Minor, v. North Western Ohio Ry. & Power Co., 116 Ohio St., 451, 157 N. E., 21, 53 A. L. R., 1486; and Sobolovitz v. Lubric Oil Co., 107 Ohio St., 204, 140 N. E., 634.
“The inference arises out of a process of reasoning, or from common experience, that when certain facts exist, certain other facts usually co-ordinate therewith * * *.” Sobolovitz v. Oil Co., supra.
There is no question in our minds that the facts of this action, as hereinbefore set out, regardless of their “construction” or “treatment” in favor of or against one of the parties, and without considering any presumption, “support but do not compel” an inference that McCarty struck the blow while acting in his official capacity as a deputy sheriff.
From this, if for no other reason, the conclusion is inescapable that, since there is direct evidence offered by the plaintiff tending to prove a deduction or conclusion, i. e., an inference, that the act was done in McCarty’s official capacity, it was error prejudicial to the substantial rights of the defendants for the trial court to even mention the presumption of official capacity to the jury, either by a written instruction before argument or in its general charge.
The judgment of the Court of Appeals so far as it reverses the judgment of the trial court notwithstanding the verdict is, therefore, affirmed; and, since the charge of the trial court *146 regarding the presumption not only placed too great a burden upon the defendants but was, under the facts of the instant action, error per se, the judgment of the Court of Appeals so far as it determines that there was no abuse of discretion in the allowance of a new trial by the trial court is also affirmed.

Judgment affirmed.

WeygaNdt, C. J., Zimmermak, Stewart, Bell and Taft, JJ., concur.
Herbert, J., not participating.