SARAH V. GIBBS AND CHAS. S. GIBBS, Appellees, v. FARM-
ERS' & MERCHANTS' STATE BANK AND C. D. BUTTER-
FIELD, Appellants.

Action for Money had and Received: OVER PAYMENT: BURDEN OF
1  PROOF.  In an action to recover amounts overpaid on a note,
and the endorsements show an over-payment, a presumption
may arise that the endorsements show correctly the amount
paid, but this presumption is not conclusive and the burden
of proof is not shifted, but remains with the plaintiff through-
out the case.

Instructions: BURDEN OF PROOF.  Where the maker of a note upon
2  payment received it with a slip containing endorsements which
was pasted over endorsements made on the note and the payee
testified that the slip was pasted to the note with knowledge
of the maker and for the purpose of showing the correct dates
at which the payments were made, it was error to instruct
that the burden was on the payee to show that the endorse-
ments on the slip were included in those upon the note.

Evidence: OVER PAYMENT ON NOTE.  In an action to recover amounts
3  overpaid on a note, where it appeared that the maker received
the note with a slip bearing endorsements pasted on the back
and over endorsements made on the note, plaintiff claimed
credit for all endorsements, while defendant admitted only
such as appeared on the slip.  Held, that the introduction of
the note and slip, detached, did not make a *prima facie* case
of over-payment or call for any explanation by defendant, but
should be considered by the jury with the other evidence in
the case.

*Appeal from Fremont District Court.*—HON. A. B. THOR-
NELL, Judge.

SATURDAY, MAY 7, 1904.

ACTION at law to recover an amount claimed by plain-
tiffs to have been overpaid by them to the defendants upon a

note executed to the defendant bank for the sum of $2,100. It is claimed that the amount was paid through mistake, and was due to the fraud of the defendants in concealing certain payments theretofore made upon said note. The defendants answered, admitting certain payments made in satisfaction of the note, but denying any fraud or overpayments. On the issues thus joined the case was tried to a jury, resulting in a verdict and judgment for the plaintiffs in the sum of $938, and defendants appeal.—*Reversed.*

*Burke Harl* and *Tinley & Stevens* for appellants.

*George E. Draper* and *W. E. Mitchell* for appellees.

DEEMER, C. J.—The execution of a note for $2,100 by plaintiffs to the defendant bank is conceded. It also appears without controversy that certain indorsements were made upon the back of the paper on which the note was originally written, and that these indorsements were at some time—the exact date being a matter of dispute—covered over by a green slip of paper, which was pasted upon the back of the note, completely obscuring all of the original indorsements save one, and that this piece of green paper also bore certain indorsements as having been paid upon the note. It is also conceded that on December 4, 1901, plaintiffs paid the defendants the sum of $1,266.84, the amount which defendants claimed was at that time due upon the note after allowing all proper credits. It is further admitted that when the note was delivered to the plaintiffs as fully paid and canceled, it had this green strip of paper pasted thereon, which completely obscured all indorsements made on the original paper on which the note was written save one; and that thereafter the plaintiffs removed the green paper, and produced it with the original note showing indorsements thereon and presented both papers on the trial of the case. Plaintiffs claim that they paid to the defendants the amounts shown by the

indorsements on both papers, while defendants insist that no such payments were made, and that all credits were shown by the note as delivered to the plaintiffs after the green piece was pasted on the back thereof. As will be observed, the action is to recover money had and received by the defendants, due to a payment made by plaintiffs through mistake superinduced by the fraud of the defendants. The defendants denied the alleged fraud and mistake, although they admitted the final payment of something more than $1,200, but claimed that this was the amount due on the note. Defendants explain the appearance of the green paper in this wise: After they took the note, they rediscounted it to a bank or individual at St. Joseph, Mo.; but plaintiffs paid interest and part of the principal to the defendants before it is claimed the note was due, or at least before interest payments matured. Plaintiffs were given credit for the amounts paid upon defendants' books, but the amounts thus paid were not remitted to the owner of the note until the interest payments were due. When due, these interest payments, with whatever was paid upon the principal, were sent to St. Joseph, to the party holding the note, and he made the indorsements at the time he received the money. Defendants claim that thereafter Chas. S. Gibbs appeared at defendants' bank, for the purpose of ascertaining the amount due, and insisted that the payments should be credited upon the note as of the time he made them to the defendants, and that defendants acceded to this request. That the strip of green paper was pasted upon the note in order to obliterate the indorsements thereon made, and that the indorsements were made on this green paper according to the date of payment to the defendants. This is denied by the plaintiffs, and they insist that all payments indorsed either on the original note or on the green paper were actually made, that they did not agree to the pasting of this green strip on the back of the note, and did not know of it until they came to make final payment, and that they were misled thereby into making payment for more than the amount actually due. At the time the last payment was

made, plaintiffs gave defendants a check therefor, which re-
cited that it was in full for the amount of the $2,100 note,
restated the amount theretofore paid on the note, and also
referred to a check issued by plaintiff Chas. S. Gibbs, on the
defendants, stating that it was offset by the return of the
check. Plaintiffs claim that everything appearing upon this
check, save what would naturally appear on an ordinary in-
strument of that character, was added after they had signed
it, and assert that the check therein referred to, while re-
turned as stated, was paid by the defendant bank, and, as we
understand, was charged to his account by the defendants.
Plaintiffs attempted to account for the manner in which they
acquired the money with which they claim to have made the
payments on the note, but this was attempted to be met by
the defendants, by a showing that they (plaintiffs) did not
acquire the money as stated, and made no more payments,
except the last, save those appearing upon the note after the
green strip of paper was pasted thereon and delivered to the
plaintiffs.

Such were the issues and the testimony on which the
case was tried. To make out their claim of overpayment, it
was necessary for plaintiffs to show that they made all pay-
ments appearing upon the back of the note as
originally written, and also those appearing on
the green strip of paper. Defendants were in-
sisting that no payments were made save those appearing
upon the instrument as delivered to the plaintiffs when the
final sum was paid. They, of course, insisted that the in-
dorsements originally made upon the note were covered by
the indorsements entered upon the green strip of paper after
it was pasted on the original. The action was not upon the
note, but for overpayments made thereon, due to mistake or
fraud on the part of the defendants; in other words, for
money had and received. Defendants denied the receipt of
the money claimed to have been overpaid. Plaintiffs were
relying, not on the instrument as it was re-delivered to them
by the defendants with the green strip of paper pasted there-

1. OVER pay-
ment: bur-
den of proof.

on, but on the indorsements on both pieces of paper after they had removed the green strip from the original.

On this record the trial court gave the following, among other, instructions: "Aside from the credits or amounts it is admitted by the defendants in evidence were in fact paid by the plaintiffs on said note, there are other indorsements that appear on the back of said note that the defendants admit in evidence were placed there at the date they purport to bear by the persons having at the time the legal custody of the note. These indorsements are as follows: '$147.00 March 3, 1896. $350.00 March 25, 1896. $124.00 May 21, 1897. $300.00 July 9, 1897.' As these indorsements appear on the back of the note, the presumption is, in the first instance, that, in the absence of other evidence, that said amounts were in fact paid on said note at the time said indorsements purport to bear date. But this presumption is not conclusive, but it does cast the burden on the defendants to show by the greater weight of the evidence that said disputed credits are contained or included in those admitted by them as before explained." In another instruction the court said: "The burden rests with the defendants to show by the greater weight or preponderance of the evidence that said disputed indorsements are contained or included in said indorsements of October 19, 1895, and September 18, 1896." And in still another: "But, as before stated, the burden rests with the defendants in the first instance to show by the greater weight of the evidence that the disputed indorsements are included in said indorsements of October 19, 1895, and September 18, 1896."

Remembering the nature of this action, and what plaintiffs are compelled to show in order to be entitled to a verdict, these instructions were erroneous. Had all the indorsements been made upon the paper on which the note was originally written, instead of being obscured or obliterated by the green paper pasted on the back thereof, it is clear that these indorsements should be treated in an action of this kind simply as declarations against interest, or as admissions made by

the defendants as to payments made, which were not conclusive, because not arising to the dignity of a contract, but
as tending to show payments in the amounts and at the
times the indorsements were made. The burden was upon
the plaintiffs at all times to prove the overpayments alleged
by a fair preponderance of the evidence, and that they were
made through fraud or mistake. The issues between the
parties were plain and simple. Defendants did not admit
the receipt of all the money claimed to have been paid by the
plaintiffs, nor did they attempt to confess and avoid the allegations of the petition. They simply admitted the receipt
of certain payments, and denied the making of any other.
Plaintiffs introduced the papers to which we have referred
for the purpose of showing all payments claimed to have been
made by them, but this evidence was not conclusive, nor did it
shift the burden of proof. Conceding, arguendo, that such
papers were admissible, it by no means follows that the burden
of proof was shifted to the defendants to prove that these indorsements did not represent actual payments. While certain presumptions of fact may arise during the trial of a
case, these presumptions do not ordinarily change the burden of proof. It still remains, as in the beginning, upon him
who has the affirmative of the issue. *Taylor v. Ins. Co.,* 110
Iowa, 621, and cases cited. There is some confusion in the
cases on this proposition, due to an indiscriminate use of the
word "presumption." *Farmers' Loan & Trust Co. v. Siefke,*
144 N. Y., 354 (39 N. E. Rep., 358;) *Willett v. Rich,* 142
Mass., 357 (7 N. E. Rep., 776, 56 Am. Rep., 684;) 4 Harvard Law Review, 70; *Central Bridge Co. v. Butler,* 2 Gray
132; *Heinemann v. Heard,* 62 N. Y., 448; *Pease v. Cole,* 53
Conn., 53 (22 Atl. Rep., 681, 55 Am. Rep., 53.) The burden of the proof and the weight of the evidence are two entirely distinct and separate things. The former does not
change, but the latter may, according to the nature and
strength of the proofs offered on the trial. See Thayer,
Cases on Evidence, pages 44, 49. Even when the plaintiff
has made out a *prima facie* case, the burden of the proof

does not shift to the defendant in any proper sense. All that is meant by such an expression is that the other party must go forward with his proofs if he would not have a judgment against him. *Powers v. Russell,* 13 Pick. 69. A presumption is sometimes said to shift the burden of the proof, and in some cases this is true; but, generally speaking, it does not have this effect. It simply assists in making out a *prima facie* case, but does not change the burden of the proof. See article by Judge McClain, 17 Am. L. Rev. 894; *Baxter v. Abbott,* 7 Gray, 71; *State v. Lee,* 69 Conn., 186 (37 Atl. Rep. 79). When a *prima facie* case is made out by presumption or otherwise, in order to destroy its effect and shift the burden of producing further evidence the party denying it must produce evidence tending to negative the claim asserted to a point where, if no more testimony is given, his adversary cannot win by a preponderance of the evidence. *Smith v. Sac Co.,* 11 Wall., 139 (20 L. Ed., 102;) *Stewart v. Lansing,* 104 U. S., 505 (26 L. Ed. 866;) *Foster v. Hall,* 12 Pick., 89 (22 Am. Dec., 400;) *M. P. R. R. v. Brazzil,* 72 Tex., 233 (10 S. W. Rep., 403.) It is clearly a misnomer of terms to say that the burden of proof swings like a pendulum from one side to the other during the progress of a trial. All that is meant is that the duty of introducing evidence to meet a *prima facie* case shifts back and forth. *Pease v. Cole,* 53 Conn., 53 (22 Atl. Rep. ,681, 55 Am. Rep., 53.) The burden of proof at all times rests upon him who affirms. 1 Taylor, Evidence (9th Ed.) 276; Am. Notes, 12; *Willett v. Rich,* 142 Mass., 360 (7 N. E. Rep., 776, 56 Am. Rep., 684;) *Heinemann v. Heard,* 62 N. Y., 448.

Probably the best statement of the rule is that given by Chief Justice Shaw in *Powers v. Russell, supra,* as follows: "It may be useful to say a word upon the subject of the burden of proof. It was stated here that the plaintiff had made out a *prima facie* case, and therefore the burden of proof was shifted, and placed upon the defendant. In a certain sense this is true. Where the party having the burden of

proof establishes a *prima facie* case, and no proof to the contrary is offered, he will prevail. Therefore the other party, if he would avoid the effect of such *prima facie* case must produce evidence of equal or greater weight to balance and control it, or he will fail. Still the proof upon both sides applies to the affirmative or negative of one and the same issue or proposition of fact, and the party whose case requires the proof of that fact has all along the burden of proof. It does not shift, though the weight in either scale may at times preponderate. But where the party having the burden of proof gives competent and *prima facie* evidence of a fact, and the adverse party, instead of producing proof which would go to negative the same proposition of fact, proposes to show another and a distinct proposition, which avoids the effect of it, there the burden of proof shifts, and rests upon the party proposing to show the latter fact. To illustrate this: *Prima facie* evidence is given of the execution and delivery of a deed. Contrary evidence is given on the other side, tending to negative such fact of delivery. This latter is met by other evidence, and so on through a long inquiry. The burden of proof has not shifted, though the weight of evidence may have shifted frequently; but it rests on the party who originally took it. But if the adverse party offers proof, not directly to negative the fact of delivery, but to show that the deed was delivered as an escrow, this admits the truth of the former proposition, and proposes to obviate the effect of it by showing another fact, namely, that it was delivered as an escrow. Here the burden of proof is on the latter."

The vice of the instructions given by the trial court is made apparent by this suggestion. Suppose the testimony offered by defendants with reference to the disputed credits left the matter in equipoise—that is to say, met the presumption stated by the trial court to exist—who, under the instruction as given, would have been entitled to the verdict? Manifestly, the plaintiffs. But, as we have seen, this is not the true rule. If defendants' evidence left the matter in equilibrio, then they should have had the verdict, for the

burden on the entire case was with the plaintiff. When, upon all the facts, the case is left in equipoise, the party affirming must fail. *Oaks v. Harrison,* 24 Iowa, 179. The defendants did not confess and avoid, either in their pleadings or upon their proofs. They did admit in evidence that all the indorsements referred to were either on the original note or the green paper; but this, as we have said, was nothing more, in any event, than an admission or declaration against interest, and at most simply called upon them to go forward with their case. If they met these so-called admissions by testimony which left the matter equally balanced, then they did all that was required of them. The whole matter was simply evidentiary, and the burden did not shift. Had the action been upon the note itself, and plaintiffs had been claiming certain credits, perhaps the rule announced in *Carson v. Duncan,* 1 G. Greene, 466, would have applied. But such is not the case. The action is for money had and received, and these two pieces of paper were simply evidentiary facts of more or less weight, to be considered by the jury in making up its verdict. Doubtless the trial court had in mind the rules we have announced with reference to what results from testimony in making out a *prima facie* case; but the thought was not expressed in such a way as that a jury could understand it, and the effect was to authorize a verdict for the plaintiffs unless the defendants overcame this *prima facie* evidence by the greater weight of the testimony. This, as has been observed, is not the true rule. The following cases illustrate the views we have expressed. *Scott v. Wood,* 81 Cal., 398 (22 Pac. Rep. 871;) *Atkinson v. Goodrich,* 69 Wis., 5 (31 N. W. Rep. 164;) *Clark v. Hiles,* 67 Tex. Sup., 141 (2 S. W. Rep., 356;) *Central Co. v. Butler,* 2 Gray, 130; *Homire v. Rodgers,* 74 Iowa, 395.

II. But the instructions given were erroneous in another particular. Defendants testified that this green piece of paper was pasted on the back of the note, with plaintiff's

2. INSTRUC-
TIONS: bur-
of proof.

knowledge and consent, in order that they might have the benefit of the payments at the

time they were made; that plaintiffs, in effect, agreed to the indorsements appearing upon the green slip of paper as being correct, and that they received the note with the former indorsements entirely obliterated. True, plaintiffs denied any knowledge of the pasting of the green slip of paper on the back of the note until it was surrendered up to them at the time the last payment was made. Such being the record, it was error for the court to ignore the defendants' evidence as to the circumstances under which the paster was put upon the note, and to direct the jury that the burden was upon the defendants, in any event, to show that the disputed indorsements were included in those appearing on the green piece of paper. If the jury believed the defendants' evidence as to how the paster came to be put on the back of the note, the presumption to which the court referred would have been fully met and rebutted, and no further burden would have rested upon the defendants.

III.  In an action upon a note on which there are canceled indorsements of payments it is generally incumbent on the holder to show that these indorsements were made

3. EVIDENCE: over payment on note. through mistake by some witness who knows of the fact. Indeed, it was said in *Carson v. Duncan,* 1 G. Greene, 466, that "a credit on the back of a note cannot be erased by any person except the party in whose favor the credit is given, or by some person by him authorized, * * * and that the holder of the note should explain such erasure before he should be permitted to recover." See, also, *Graves v. Moore,* 7 T. B. Mon., 341 (18 Am. Dec., 181.) Whatever we may now think of this rule, it does not seem to have been departed from in any subsequent case, and, were the action here upon the note, we should be inclined to follow it. But such is not the proceeding. It is to recover money paid through mistake, superinduced by defendants' alleged fraud. The indorsements were in no sense contracts between the parties. As they appeared upon the note when delivered to the plaintiffs, the credits appearing on the original paper, save one, were entirely oblit-

erated. When turned over to plaintiffs, the only admissions appearing thereon were those which are now admitted by the defendants. Plaintiffs did not introduce the paper as it was when so delivered to them, but they took off the paster, and insisted that all indorsements be counted as so much money paid. In view of the testimony offered by the defendants in explanation thereof, it is clear that the court should not have assumed that these indorsements were evidence of payments. That question should have gone to the jury, as we have before stated. But, aside from this, as the action was not upon the note, and the paper was offered as an admission made by the defendants of the receipt of so much' money; and as the instrument, when delivered to the plaintiffs' was fair on its face, and the alleged alteration was only discovered after the removal of the paster, we think there was no presumption which defendants were called upon to explain. The admission, as delivered to the plaintiffs, was the one appearing upon the back of the instrument, and there was no presumption either way about the indorsements which had been entirely obliterated. Of course, these matters were all admissible in evidence, but under the circumstances these indorsements so covered up and entirely obliterated did not make out a *prima facie* case for the plaintiff, nor did they call for any explanation on the part of the defendants. See, as directly supporting these conclusions, *Tubb v. Madding, Minor,* (Ala.) 129; *Chamberlain v. White,* 79 Ill., 549; *Burtch v. Dent,* 13 Ind., 542. Also, as lending support thereto, *McGee v. Allison,* 94 Iowa, 527; *Farmers' Bank v. Olson,* 92 Iowa, 770; *Hagan v. Ins. Co.,* 81 Iowa, 321; *Theopold Co. v. Deike,* 76 Minn., 121 (78 N. W. Rep. 977, 77 Am. St. Rep. 607). Had plaintiff produced a receipt written on paper as this one was, which was fair on its face, such receipt would simply be evidence of the payments recited therein, and not for other items which were wholly obliterated. They did not produce the receipt as it was delivered to them, hence they did not make out a *prima facie* case of more payments than defendants admitted they had received. We

must not be understood as holding that neither paper was admissible in evidence. What we do hold is that, while both papers were admissible, the introduction of the indorsements which were entirely obliterated did not make out a *prima facie* case for the plaintiffs. They were to be considered with all the other evidence in the case, and given such weight as the jury thought they were entitled to.

Other matters are argued by counsel, but, as they are not likely to arise upon a retrial, we do not consider them.

For the errors pointed out, the judgment must be and it is, REVERSED.