FRANCIS ALLBAUGH, by his next friend, ELVA ALLBAUGH, Appellee, v. DAVID ASHBY et al., Appellants.

No. 44622.

MARCH 14, 1939.

Gibson, Stewart & Garrett, R. C. Waterman, and S. W. Livingston, for appellants.

Morrison & Morrison, for appellee.

OLIVER, J.—Appellee, Francis Allbaugh, was injured on December 18, 1936, about 11 a. m., while riding as a guest in an automobile driven by appellant, David Ashby, and brings this action at law against said David Ashby and his father, appellant, Charles E. Ashby, the owner of said automobile, based upon its alleged reckless operation. At said time appellant, David Ashby, was about 17 years old, and lived with his parents near Washington, Iowa, at which place he attended high school. Appellee was 16 years of age, lived in Washington, and also attended said school. The accident and resulting suit grew out of a trip which these boys and two other boys started to take from Washington to Burlington in a 1931 Chevrolet coach driven by appellant, David Ashby.

They traveled east upon highway No. 2, a paved road which passes through the south part of the neighboring town of Ainsworth, in an east and west direction. The pavement appears to be about 18 or 20 feet in width. At the east edge of Ainsworth, highway No. 2 is intersected by Railroad street, which runs south from the main part of town, and about ¼ mile west by another north and south street. There was a 25 mile speed limit sign facing west on the south side of highway No. 2 near this west intersection, and another such sign facing east on the north side of the highway just east of its intersec-

tion with Railroad street. Most of the road traffic to and from Ainsworth goes over these intersecting streets. The highest place on highway No. 2 between these intersections is about 40 feet west of Railroad street. From that place it slopes downward to the east for more than a block to a bridge. Toward the west is a downgrade or gentle slope for about 400 feet from which point there is a slight upward slope farther west for about 600 feet.

I. There was evidence from which the jury might have found that appellant, David Ashby, was familiar with this highway through Ainsworth, with the speed limit signs and the 25 mile zone between them; that he knew his brakes were not working properly; that as he drove through this 25 mile zone his car "was making a lot of noise"; that from the low point in the road to the point of collision, the Ashby car traveled at a speed of 50 or 60 miles per hour; that at that time the traffic on highway No. 2 was heavy, and appellant knew he was nearing a busy intersection near the brow of a hill or slope, below which approaching cars would be visible for only a short distance. The jury might further have found from the evidence that from all places on the highway for more than a quarter of a mile west of Railroad street, trucks and automobiles at the Railroad street intersection and at least forty feet east thereof, were visible to the driver of an automobile coming from the west; that within the view of appellant, David Ashby, while his car was at least several hundred feet to the west, a slowly moving car hauling a trailer and traveling west on the highway, started to turn south at the Railroad street intersection and that a few feet behind the trailer was a Ford truck with high stock rack, traveling slowly westward on the pavement, the top portion of which was visible to appellant, David Ashby, not later than the time when the car hauling the trailer had passed from the north side of the road and before the trailer had done so; that the Ashby car did not slacken its speed as it approached the intersection upon which the car and trailer were slowly moving across the pavement but that the rear end of the trailer was either at the south edge of the pavement or off the pavement when the Ashby car passed it; that when the Ashby car reached a point about 75 feet west of Railroad street it swerved to the left or north side of the pavement so that the Ford truck was directly in its path at a distance

in the neighborhood of 125 feet; that at and prior to the time the Ashby car veered to the left side of the pavement the Ford truck was visible to the appellant, David Ashby; that no apparent attempt was made to return the Ashby car to its proper side of the pavement and it continued to travel on the north side thereof without slackening its speed to and across the Railroad street intersection and a few feet east thereof, at which place it collided head-on with the truck, and as a result appellee received severe and permanent injuries.

The foregoing recitations are made for the purpose of considering one of the assignments of error urged by appellants, to wit: that the evidence was insufficient to warrant the court in submitting to the jury the question whether the accident was caused by the reckless operation of the Ashby automobile. While there is evidence in the record in conflict with many of such recitations, it is unnecessary to detail or consider the same in connection with this assignment of error.

The question of the sufficiency of evidence to warrant a recovery by a guest on the ground of reckless operation of a motor vehicle has been passed upon by this court a number of times, and very recently in Reed v. Pape, 226 Iowa 170, 284 N. W. 106. This court has held in several cases that frequently no one factor such as speed alone could be definitely assigned as recklessness, but a combination of factors such as speed, plus limited visibility, congested traffic, slippery road surface or the like would be required. Mescher v. Brogan, 223 Iowa 573, 272 N. W. 645; Claussen v. Johnson's Estate, 224 Iowa 990, 278 N. W. 297.

In the case at bar there was evidence of excessive speed with defective brakes through traffic in a 25 mile zone and across a well traveled intersecting street in a town and over the brow of a slope or hill which the driver knew limited visibility, with failure to slacken speed when confronted with a dangerous situation, failure to keep a lookout, or to have the car under control, swerving to the left side of a narrow paving, and continuing on the wrong side thereof in the face of visible oncoming traffic. We think the evidence upon this proposition was sufficient to justify its submission to the jury.

II. Appellant, Charles Ashby, urges that the evidence tending to show that the car was being driven with his consent was not sufficient to warrant the submission to the jury of the

question of his liability and that the court erred in refusing to direct a verdict in his favor upon that ground.

The record shows that on different occasions David had driven appellee and other boys around Washington after school hours, and had once taken appellee to West Chester to see a football game. There was also evidence that after the accident in suit David said his father let him use the car and that appellant, Charles Ashby, said the car was one he let the boys use. David testified that his father provided the conveyance for him to go to school, instructed him not to drive too fast, not to drive around town much after school, to come right home from school, and not take any long trips without consulting him; that at the time of the West Chester trip he telephoned home and asked his mother if it would be all right if he went over there, that she said it was all right, and so he went; that on the occasion in controversy the boys all left their classes for the trip to Burlington at a time when school was in session and David didn't tell his father and mother about the trip.

From the testimony of Charles Ashby it appears that he had one automobile for his own use and procured this Chevrolet, which was also registered in his name, but was in part secured by David's earnings, for said son, primarily to drive to school, and that he permitted David to use it for other purposes. David was told to be careful and not drive too fast, to get home after school as soon as he could and to do good work in school. The father testified that his permission was required whenever David used the car but it appears from the record that the son didn't always return home immediately after school, that he occasionally drove the car away from town and did not always telephone his father before so doing, and that he used the car continuously. Appellant, Charles Ashby, further testified:

"I wanted to always know about his trips whenever he made one and I always told him to let me know before he made a trip, a long trip. He never let me know about this trip to Burlington. He did not ask me if he could leave school that day. I never gave my consent to David to make any such trip as that."

█ In a number of cases we have held positive testimony of a defendant, that there was no consent to the use of an automobile, was not conclusive and could be rebutted by circumstances,

together with the reasonable or unreasonable character of the testimony. Lange v. Bedell, 203 Iowa 1194, 212 N. W.354; Landry v. Oversen, 187 Iowa 284, 174 N. W. 255; Wolfson v. Jewett Lumber Co., 210 Iowa 244, 227 N. W. 608, 230 N. W. 336.

The circumstances in the case at bar appear to make a stronger case for consent than in any of the above cited cases. We do not have here the situation of a family car used by its various members, but of an automobile procured especially for and used exclusively and continuously by the son, David. The lack of consent appears to have referred, not primarily to the use of the car, but rather to the absence of the boy. The father wanted to know the whereabouts of the son and the permission required related to the doings of David more than to the use of the car. David was not even expected to tell his father, the owner of the car, of a proposed trip. It was sufficient that his mother be notified, as in the case of the trip to West Chester.

Moreover it appears that although the father may have *desired* that the son secure his consent to use the car for pleasure trips, no such consent was actually *required,* that the son had general consent to use the car and did habitually drive when and where he fancied. Under the record in this case the question of consent to use the car was clearly for the determination of the jury.

III. Complaint is made that the court failed to submit to the jury the following special interrogatory:

"Do you find that the defendant, David Ashby, was driving the Chevrolet car involved in this cause, at the time of the accident, with the knowledge and consent of the defendant, Charles E. Ashby, as charged in plaintiff's petition?"

There was no error in refusing this interrogatory since it contained an element not required by section 5026 Code of Iowa 1935, to wit: the question of *knowledge* of Charles E. Ashby that David was at the time of the accident driving the Chevrolet car. Under the above statute the proof need go no further than to show *consent.* While it may be said that *knowledge and consent* frequently go hand in hand, the words are not synonymous and in this case, where there was no evidence of actual *knowledge* the use of this word might have misled the jury. Nor would the inclusion of the words "knowledge and consent" in

the petition warrant its use in the interrogatory. That appellee plead something more than he was required to prove in this particular did not result in his being required to make such additional proof.

IV. The court instructed the jury that the law implies that a car being driven by another than its owner is being driven with the owner's consent "and this places the burden upon the owner to prove, by a preponderance of the evidence, that the car was not being driven with his consent." The quoted portion of this instruction was erroneous and placed an undue burden upon appellant, Charles Ashby. The inference from ownership of the car does not change the burden of proof. That continues on the complaining party throughout the trial. Hunter v. Irwin, 220 Iowa 693, 263 N. W. 34; Landry v. Oversen, 187 Iowa 284, 174 N. W. 255; Baldwin v. Parsons, 193 Iowa 75, 186 N. W. 665.

The failure to correctly instruct the jury as to the burden of proof upon this issue constitutes prejudicial error and requires a reversal of the case as to the owner of the car. Gibbs v. Farmers & Merchants State Bank, 123 Iowa 736, 99 N. W. 703; Howard & Harper v. Chicago B. & Q. R. Co., 196 Iowa 1378, 195 N. W. 153.

V. Instruction No. 2 purported to advise the jury as to the essential elements which must be proved to entitle plaintiff to recover, and reference was again made thereto in instruction No. 11. In neither of these instructions nor at any place other than in the erroneous instruction quoted above was the jury advised as to the additional element of proof of consent to use the car which was required to justify a verdict against the owner of the automobile in question. Each instruction which purported to set out all elements necessary to warrant a recovery against both the operator and the owner of the automobile should have included this additional element; and any portion of the charge which was intended to refer to the driver only should have so stated, to the end that the basis of liability of the driver and that of the owner of the automobile should be clearly explained and differentiated, without contradiction in the various instructions.

The motion to strike the amendment to appellee's brief and argument is overruled for the reason that the court granted leave to file this amendment.

Wherefore, the case is affirmed as to appellant, David Ashby, and reversed as to appellant, Charles E. Ashby.—Affirmed in part, reversed in part.

SAGER, HALE, STIGER, and BLISS, JJ., concur.

MITCHELL, C. J., and RICHARDS, J., dissent.

MITCHELL, C. J. (dissenting)—I find myself unable to agree with the opinion and respectfully dissent.

The reversal is based upon the instruction given by the trial court. Because the instruction may be erroneous does not in my humble judgment always mean that it constitutes prejudicial error or requires a reversal of the case. The record in this case shows without any question that the son had the consent of the father to drive the car, even the majority admit that. I quote:

"Moreover it appears that although the father may have *desired* that the son secure his consent to use the car for pleasure trips, no such consent was actually *required*, that the son had general consent to use the car and did habitually drive when and where he fancied."

Certainly in face of such a record no jury could have possibly been misled by the instructions given whether it may have been an erroneous statement of the law. Instructions are for the purpose of assisting the jury and not to be used after an adverse decision in a technical manner for the purpose of securing a reversal. Unless the instruction was prejudicial reversal should not be granted. Justice Weaver in the case of Elliott v. State Bank, 149 Iowa 309, 319, 128 N. W. 369, 372, speaking for this court said:

"We think it must be said that no set of instructions ever yet framed by a trial court could stand the test of an appeal if the severely critical and technical tests for which appellant contends were to be adopted and enforced by us.

"Instructions are of necessity prepared under more or less pressure to avoid interference with the progress of the business of the term.

"They are addressed to jurors unskilled in law and unversed in legal phraseology. * * * The standards by which in-

structions are to be judged are not those which might properly be applied to a technical treatise prepared for the use of the profession.''

I would affirm the decision of the lower court.