GUS RITTER et al., appellees, v. GEORGE E. DEXTER, SR., individually and as administrator of estate of GEORGE E. DEXTER, JR., appellants.

No. 49656.

(Reported in 95 N.W.2d 280)

March 10, 1959.

Rehearing Denied May 8, 1959.

McDonald & McCracken and Walter E. Kroeger, all of Davenport, for appellants.

Waldo M. Wissler, of Davenport, for appellees.

OLIVER, J.—This is a companion case of McBride v. Dexter, 250 Iowa 7, 92 N.W.2d 443, which was an action for damages for injuries suffered by John McBride, an occupant of a Mercury automobile, owned by George E. Dexter, Sr., and with his consent driven by his son, George E. Dexter, Jr., on the evening of November 26, 1955, when it ran off the pavement at a curve and was wrecked. The driver, Dexter, Jr. was fatally injured and the four other boys who were riding in the car suffered serious injuries. One of them was John McBride. Another was James Ritter, then age seventeen years, who subsequently attained his majority by marriage. He is a plaintiff in this action for damages for his injuries, along with his father, Gus Ritter, who seeks recovery for doctor and hospital expenses, etc., and for loss of the services of James during his minority.

Defendants are George E. Dexter, Sr., in person, as the owner of the automobile, and also as administrator of the estate

of George E. Dexter, Jr., the driver. Trial to a jury resulted in judgment against defendants, for plaintiff Gus Ritter for $3526.70 and for plaintiff James Ritter for $8000, and this appeal by defendants.

I.   As in McBride v. Dexter, supra, 250 Iowa 7, 92 N.W.2d 443, an important issue is whether the motor vehicle guest statute, section 321.494, Code of Iowa, 1954 (1958) is here applicable. It provides:

"Guest statute. The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

This action is based upon two different theories, pleaded in separate counts of the petition. One pleaded theory is that James Ritter accompanied Dexter, Jr. in the Dexter car, to the near-by town of Walcott for the purpose of assisting him in searching for fender skirts there stolen from the car during the previous week; that this gave him the status of a passenger in the Dexter automobile for the benefit of its operator, as distinguished from that of a guest, and that his injuries were caused by Dexter, Jr.'s negligent operation of the Dexter automobile. The other pleaded theory is that James Ritter was a guest in the car and his injuries were caused by the reckless operation of the car by Dexter, Jr.

II.   Appellants based their appeal upon but one assignment of error, to wit: errors of the trial court in overruling their motions for directed verdict and for judgment notwithstanding verdict. Their written briefs and oral arguments rested upon the single contention that the evidence was not sufficient to justify submission to the jury of either the issue of reckless operation of the car, or the issue that James Ritter was riding in the car in any capacity other than as a guest. In determining the question of such sufficiency, the established rule requires that the evidence be considered in the light most favorable to plaintiffs.

█ The guest statute, which requires that an injured occupant seeking recovery from the owner or operator prove reckless operation, is applicable only when such occupant is riding "in said motor vehicle as a guest * * *." If he sustains the burden of proving he was riding in it in some other capacity, the ordinary rules of liability for negligence will govern.

█ Dexter, Jr. and James Ritter attended the same school in Bettendorf. A few days before Saturday, November 26, 1955, Dexter, Jr. had asked James Ritter to go with him to Walcott, a small town about ten miles distant, on Saturday night, and help him look for fender skirts that had been stolen from the Dexter car the previous week. James Ritter did not then know whether he could make the trip. On the Saturday evening in question Dexter, Jr. saw James Ritter at a skating rink in Bettendorf and again asked him if he would like to go to Walcott with him to look for the fender skirts. Dexter, Jr. was driving his father's Mercury automobile which was in good condition. Upon learning McBride was with James Ritter, Dexter, Jr. said both of them could go out. Several other boys went with them in the Dexter car. The drive to Walcott took fifteen or twenty minutes. They all looked at the fender skirts on the cars at Walcott by walking up and down one block and then by driving around several other blocks, but did not find the stolen fender skirts. They went to a dance hall for a very short time, had lunch at a café and then started to return to Davenport.

Dexter, Jr. drove a short distance to Highway No. 6, upon which they traveled at the rate of about seventy-five miles per hour before reaching Hahn's Corner, where he slowed the car for a sharp curve. After leaving that curve he increased the speed of the car. About a mile from the place of the accident it overtook and passed a semitrailer at eighty miles per hour. Then it approached a curve sign indicating a slight curve to the left. One of the occupants of the car testified he realized they were not going to make it around the curve. The car failed to negotiate the curve and went off the right side of the pavement and grade about twenty-five or thirty feet from the curve sign. It passed through the ditch alongside the pavement and traveled across culverts and driveway embankments a

distance of about two hundred feet. Officers found the five young men, seriously injured, lying around the scene of the accident. The car was wrecked.

III. The record concerning the operation of the automobile at and immediately before the time of the accident is substantially the same in the case at bar and in McBride v. Dexter, supra, 250 Iowa 7, 92 N.W.2d 443. In the McBride case it was held insufficient to justify submission to the jury of the issue of reckless operation of the automobile by Dexter, Jr. This holding in the McBride case is here directly in point. We follow it and hold the proof of reckless operation of the automobile in the case at bar was insufficient to take that issue to the jury.

IV. However, upon the question whether there was substantial evidence that the injured occupant of the car was not a guest the record here differs from that in McBride v. Dexter, supra, 250 Iowa 7, 9, 10, 92 N.W.2d 443, 444, 445. There the court pointed to the allegation in the petition that McBride accompanied Dexter, Jr. for the purpose of assisting him in looking for and endeavoring to recover the fender skirts of the Dexter automobile, and stated:

"This, it is urged, made him a passenger for the definite, tangible benefit of the operator, and so removed his status from that of a guest or passenger not for hire within the meaning of section 321.494, supra. See Knutson v. Lurie, 217 Iowa 192, 251 N.W. 147, a leading case on this point; Thuente v. Hart Motors, 234 Iowa 1294, 15 N.W.2d 622; and Stenberg v. Buckley, 245 Iowa 622, 61 N.W.2d 452. These, and other cases cited by the plaintiff, deal with the question of when a passenger is not a guest, but is being transported either for the joint and mutual benefit of the driver and rider or for the benefit of the driver alone. If plaintiff's position at this point were sound, he would be freed of the necessity of proving recklessness on the part of the driver of the car; proof of negligence would entitle him to the consideration of the jury.

"But the weakness of his case at this point is that there is no evidence that the plaintiff went on the trip for the purpose of aiding Dexter in searching for his fender skirts. No one so testifies."

The opinion then refers to the testimony of McBride, and two other witnesses, none of whom testified Dexter asked McBride to help him look for the fender skirts. It continues:

"Ritter's testimony is that Dexter asked him to help look for the skirts; he does not say McBride was requested, or agreed, to help.

"This is the total of the evidence bearing on the question, and it fails to show anything for the jury's determination upon the claim that McBride was on the trip for the benefit of Dexter. We are mindful of the rule that in considering the correctness of a ruling which directs a peremptory verdict for the defendant the evidence must be taken in the aspect most favorable to plaintiff which it will reasonably bear. But there is nothing from which it could reasonably be deduced that any definite and tangible benefit to Dexter was bargained for or expected from McBride's presence in the car."

Reference has already been made to evidence in the case at bar, that James Ritter rode to Walcott in the Dexter automobile at the request of Dexter, Jr. for the purpose of aiding the latter in searching for the fender skirts of the Dexter automobile.

Knutson v. Lurie, supra, 217 Iowa 192, 195, 251 N.W. 147, 149, points to the rule that one who rides in an automobile "for the definite and tangible benefit of the owner or operator" is not a guest and recovery for injuries suffered by such rider may be based upon the negligence of the operator.

That decision has been repeatedly followed or cited with approval by courts of this and other states. See Stenberg v. Buckley, 245 Iowa 622, 630 to 632, 61 N.W.2d 452, and citations; Thuente v. Hart Motors, 234 Iowa 1294, 15 N.W.2d 622, and citations. 60 C. J. S., Motor Vehicles, section 399.5(b), page 1013, states, if his carriage "is primarily for the attainment of some objective or purpose of the owner or operator * * * he is not a guest."

Martinez v. Southern Pacific Co., 45 Cal.2d 244, 250, 288 P.2d 868, 871, states:

" 'Whether a person riding with another was a passenger or a guest is to be determined on the basis of the answer to the factual question: Did the rider confer a benefit on the driver for the ride? * * * Once the trier of fact has determined

the fact [question] of benefit, the province of the reviewing court is simply to examine the record to determine whether this factual finding is substantially supported.' * * *.

"* * * Where the driver receives a tangible benefit, monetary or otherwise, which is a motivating influence for furnishing the transportation, compensation may be said to have been given, with the result that the rider is a passenger and the driver is liable for ordinary negligence. [Citations] But the benefit to the driver must be something more than simply the pleasure of the rider's company * * *."

McUne v. Fuqua, 42 Wash.2d 65, 70, 71, 253 P.2d 632, 635, 636, quotes with approval:

" '* * * It is sufficient if the presence of the occupant directly compensates the operator or owner in a substantial and material or business sense, as distinguished from mere social benefit or nominal or incidental contribution to expenses.' [Citation]."

With reference to the benefit required the decision states:

"This requirement does not mean that the *taking of the trip* must be motivated by the expectation of receiving the benefit. It need only be shown that the *furnishing of transportation to the passenger* was motivated by such expectation. Nor does it mean that the expectation of receiving the benefit must be the sole motivating factor in furnishing transportation to the passenger. It is sufficient, we believe, if such expectation is shown to be a substantial factor."

Taylor v. Goldstein, 329 Mass. 161, 165, 107 N.E.2d 14, 16, in which plaintiff was injured while being driven by defendant to secure a suitcase to lend to defendant, states:

"The rule deducible from these decisions is that a plaintiff acquires the status of an invitee if he is riding with the defendant for the purpose of conferring a benefit in the performance of something in which the defendant has an interest provided the benefit is other than 'those intangible advantages arising from mere social intercourse' [citation]; that the benefit need not be of a pecuniary nature; and that it need not arise from a contractual relationship."

In Kleinhesselink v. Porterfield, 76 S. D. 577, 584, 585, 83 N.W.2d 191, 195, 196, a father drove his son from Iowa to

a South Dakota cattle market, for advice in buying cattle. The father bought no cattle but the son did buy some for himself. On the return trip the son was injured. The decision states:

"The transportation having been motivated by a desire on the part of the father for the benefit of the son's judgment in selecting and buying cattle, and the son having entered the car for that purpose, proof that they entered into a contract with reference thereto was not essential to a conclusion that the guest statute was inapplicable."

With reference to the contention that because the two were close and affectionate companions this was the motivating reason for the trip, the decision states:

"Reason impels the conclusion that such sociability as added to the pleasure of their mission was but incidental to its primary purpose."

Haas v. Owens, 248 Iowa 781, 81 N.W.2d 654, cited by appellants, is not in point. It held a seventy-five cent contribution to the gasoline and oil bill in a trip from Dubuque to Des Moines was insufficient to remove plaintiff from the operation of the guest statute. The text in 60 C. J. S., Motor Vehicles, section 399.5(b), page 1015, states:

"Effect of sharing expenses. It is a general rule of wide acceptance that the sharing of the cost of operating the car on a trip, when the trip is undertaken for pleasure or social purposes and the invitation is not motivated by, or conditioned on, such contribution, is nothing more than the exchange of social amenities and does not transform into a paying passenger one who without the exchange would be a guest."

In the case at bar the evidence that James Ritter took the short ride in the Dexter automobile, at the request of Dexter, Jr., to help the latter look for the stolen fender skirts was sufficient to make the issue, that James Ritter was not a guest, one of fact. The proof of negligence also was sufficient to take that issue to the jury. Hence, the errors assigned by appellants are not well founded.—Affirmed.

THOMPSON, C. J., and BLISS, GARFIELD, GARRETT, PETERSON, and THORNTON, JJ., concur.

LARSON and HAYS, JJ., dissent.

LARSON, J. (dissenting)—I must respectfully dissent with the majority. I can see no substantial difference in the evidence submitted herein and that in the prior case of McBride v. Dexter, 250 Iowa 7, 92 N.W.2d 443, wherein we unanimously denied recovery.

The only difference—a mere statement by the plaintiff that Dexter asked him to go along to help search for his lost fender skirts—is not sufficient evidence, when viewed in the light of the other testimony, to permit a jury to speculate upon the question as to whether plaintiff had established a definite relationship between himself and the driver by which a tangible benefit would accrue to or be conferred upon the defendant.

The rule in this state is quite clear. The benefit accruing to or conferred upon the operator, sufficient to take the person riding with him out of the guest class, must be a tangible one growing out of a definite relationship. McBride v. Dexter, supra; Thuente v. Hart Motors, 234 Iowa 1294, 1300, 1301, 15 N.W.2d 622.

Here there is no dispute as to what happened after they reached Walcott. The two carloads of boys drove around the block twice looking for the skirts, then entered a café, ate, and drank soft drinks, and returned to Davenport. How does that indicate any tangible benefit contemplated, or establish any definite relationship between plaintiff and the driver?

I too have sympathy for the plaintiff and his family, but I can see no real distinction between this case and the other where McBride was denied recovery because he was a guest. The evidence discloses no more than a sociable venture wherein all of the boys were seeking excitement and adventure, although perhaps plaintiff's size, as suggested by his counsel, made his presence desirable, not for the purpose of finding fender skirts, but for fighting in case a brawl should occur. By trying to distinguish between these two cases, we have done nothing to aid the Bench and Bar as to when one has shown himself a guest and when a passenger.