SARAH WINTER, appellant, v. COLLIS MOORE and LINDA MOORE, appellees.

No. 50890.

(Reported in 121 N.W.2d 82)

APRIL 9, 1963.

Jones, Cambridge & Carl, of Atlantic, for appellant.

Smith, Peterson, Beckman & Willson, of Council Bluffs, and Swanson, Swanson & Boeye, of Red Oak, for appellees.

GARFIELD, C. J.—Plaintiff, Mrs. Sarah Winter, 58 at the time in question, brought this law action in two counts against defendants Collis Moore, owner, and Linda Moore, his daughter, driver of the automobile in which plaintiff was a passenger, for injuries sustained in a collision with an oncoming car. Count I alleges the trip during which the collision occurred was for the mutual benefit of plaintiff and defendant Collis and also for the latter's benefit. Also that the collision was caused by Linda's negligence in certain respects. Count II alleges plaintiff was a guest in the automobile and the collision was caused by Linda's recklessness.

At the close of the evidence defendants' motion for directed verdict on plaintiff's Count II was sustained. Count I was submitted to the jury which returned a verdict for defendants on which judgment was entered. Plaintiff has appealed. She assigns error in the instructions to the jury on two issues: 1) defendants' allegation that Linda was confronted by a sudden emergency, not of her own making, and by reason thereof the collision occurred, and 2) in submitting to the jury the question whether the trip was for the mutual benefit of plaintiff and defendant Collis, rather than to state such status existed as a matter of law. Plaintiff's third assigned error challenges the directed verdict on her Count II. We consider the three assignments in the above order. Evidence pertinent to each will be referred to when considering the error.

Linda was driving with her father's consent and the latter

would be liable for damage done by her negligence. Section 321.493, Codes, 1958, 1962.

I. Instruction 16 to the jury states in part that where one is confronted with a sudden emergency, not brought about by his own fault, he is not held to the same accuracy of judgment as would be required if he had time for deliberation. For our purposes it is not necessary to set out the entire instruction. Plaintiff objected to the instruction on the ground there is no evidence defendant-driver was confronted with a sudden emergency not brought about by her own fault and Linda's own testimony shows any emergency which confronted her was of her own making.

For a sudden emergency confronting a motorist to be an excuse for violation of a statutory rule of the road it must not have been of his own making. Kisling v. Thierman, 214 Iowa 911, 916, 243 N.W. 552, and the many decisions that have followed it; Wachter v. McCuen, 250 Iowa 820, 827, 96 N.W.2d 597, 600; Harris v. Clark, 251 Iowa 807, 809-811, 103 N.W.2d 215, 217. See also annotation, 80 A. L. R.2d 5, 15, 16.

The problem plaintiff's first assigned error raises is whether a jury question was created as to whether Linda was confronted with a sudden emergency not of her own making or was the emergency, at least in part, of her own making. This calls for a review of the evidence, in the light most favorable to defendants, as to how the collision occurred. This evidence also bears on plaintiff's third assigned error that a jury question was raised on the issue of Linda's recklessness.

We disregard for now evidence of plaintiff's status as a guest or otherwise in the car. Of course in considering whether a jury question was raised on the issue of recklessness the evidence must be viewed in the light most favorable to plaintiff. Rule 344(f)2, Rules of Civil Procedure.

There is less dispute in the evidence than in many motor-vehicle damage cases. The collision occurred on paved U. S. Highway 71 about five miles north of Villisca where the principals lived. The highway was substantially straight and level at this point. Five vehicles were somewhat involved in the tragedy. Four were proceeding north, the fifth—the oncoming

car—south. Before passing of the two northerly northbound vehicles was attempted, a state highway patrolman was immediately ahead of defendants' car. Two trucks loaded with cattle were ahead of the patrol car. Each was slightly under 50 feet in overall length. There was a space of 300 to 500 feet between the two trucks. The patrol car passed the south truck on its left and turned back into its right (east) lane between the two trucks. Linda then closed the distance between defendants' car and the rear truck.

Linda next pulled out to the left to see if it was all right to pass the rear truck. She then observed the patrol car 400 to 600 feet ahead of her in the act of passing the front truck. On the assumption it was safe for her to pass the south truck she turned clear into her left (west) lane to do so and accelerated her speed five to ten miles an hour. She succeeded in getting nearly even with the cab of the truck when the patrolman turned into his right (east) lane ahead of the leading truck. She then saw for the first time the car of a Mr. Gills approaching from the north. Thinking she would be unable to complete passing the south truck Linda applied her brakes and tried to get into her right lane behind it. She testifies she realized she "wasn't going to make it" and decided to turn to the left and try to get to the ditch on the west side of the pavement. She did not get to the ditch and collided with the oncoming Gills car in the west lane about midway of the (south) truck.

Plaintiff relies strongly on Linda's testimony, repeated at least two or three times, that as she pulled into the left lane to pass the south truck the patrol car, passing the north truck, obscured her vision of oncoming traffic. "I couldn't see any oncoming traffic because the patrol car hid it. * * * When I pulled into the left lane I did not know whether there was an oncoming car. * * * When I pulled out I assumed, without knowing, the roadway ahead would be clear."

Linda's mother, the third occupant of defendants' automobile, also testifies she was unable to see beyond the patrol car while it was passing the front truck. "At the time we eased out and looked up and saw the patrol car ahead of us in the left lane I could not see the roadway beyond it. When we pulled

on out the patrol car was still in the left lane. I could not see the roadway beyond it." Plaintiff also says she could not see beyond the patrol car. There is no evidence to the contrary.

The patrolman testifies in effect that skid marks left by defendants' car extended 110 feet to, and 26 feet beyond, its point of impact—136 feet in all. The point of impact was in the west traffic lane about three and one-half feet from the west edge of the paving. The patrolman also says that after he passed the front truck, "When I returned to my lane, the oncoming car was about 150 feet in front of me. The Moore car was approximately five to six hundred feet behind me. * * * The Moore car was * * * approximately 700 feet from this oncoming car, six to seven."

Section 321.303, Codes, 1958, 1962, provides: "Limitations on overtaking on the left. No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction."

Two of plaintiff's charges of negligence are based on claimed violation of this statute.

We think plaintiff's first assignment of error must be sustained. We find no evidence to support a finding any emergency with which Linda was confronted was not caused or contributed to by her own violation of the quoted statute. On the contrary she admits driving in the left lane in an attempt to pass the south truck when her view of oncoming traffic was obstructed. Her own testimony shows the left side of the highway was not "clearly visible" nor "free of oncoming traffic for a sufficient distance ahead to permit" passing of the truck without interfering with the safe operation of the oncoming car. As indicated, there is no evidence contrary to hers.

An extended annotation in 80 A. L. R.2d 5, 15, 16, on instructions on sudden emergency in motor-vehicle cases states that generally to warrant such an instruction the evidence should be sufficient to support a finding "that the perilous situation was not created or contributed to by the person confronted, or, as held or stated in many cases, by the tortious act or conduct of such person; * * *." See also annotation, 47 A. L. R.2d 6, 15.

5A Am. Jur., Automobiles and Highway Traffic, section 212, page 358, states: "Generally the driver of an automobile cannot invoke the emergency rule as a means of avoiding the effect of his own violation of a * * * rule of the road. He is not permitted to create an emergency by his own negligence, as by operating the vehicle * * * on the wrong side of the highway, and then derive a benefit from such situation."

Raddant v. Tamminen, 266 Wis. 49, 51, 62 N.W.2d 428, 429, is a case much like this where the car immediately ahead of defendant's "pulled out to pass the car ahead of it. She pulled out to pass the car then ahead of her. As the first car moved back into the right-hand lane of traffic, she saw the Raddant car coming in a northerly direction and then tried to get back into her right lane of traffic but could not." Defendant's view there was also obscured by a hill which declined in the direction she was going. The court held defendant created the emergency in which the collision occurred. This from the opinion is applicable here: "Her view was thus limited so that she could not see the oncoming car until it was too late to avoid a collision. She took a chance on passing the car in front of her without being perfectly sure that she would have time to get around it and back into her own lane of travel safely."

A similar case is Becker v. Hasebroock, 157 Neb. 353, 59 N.W.2d 560, where defendant collided with an oncoming car while attempting to pass another automobile proceeding in the same direction as hers. Visibility there was obscured by a hill and fog. The court held the doctrine of sudden emergency was not applicable. Ackley v. Farmers Mutual Auto Ins. Co., 273 Wis. 422, 78 N.W.2d 744, holds the emergency rule was erroneously applied where drivers were approaching each other

partly in the other's traffic lane, on opposite sides of a hill which obscured their view. Andraski v. Gormley, 3 Wis.2d 149, 87 N.W.2d 818, 820, holds a party was improperly given the benefit of the doctrine of sudden emergency where it existed because of his failure to keep a proper lookout. See also Iverson v. Knorr, 68 S. D. 23, 298 N.W. 28, 31, and Bolton v. Wells, 58 N. D. 286, 225 N.W. 791, 794.

Wachter v. McCuen, 250 Iowa 820, 827, 96 N.W.2d 597, 601, also supports our holding. We there held plaintiff was not entitled to the benefit of the emergency doctrine because he had voluntarily placed himself in the position from which the emergency arose and it "was, at least in considerable part, of his own making."

Defendants' principal argument in response to plaintiff's first assigned error is that they were entitled to a directed verdict on Count I as well as on Count II and therefore any alleged error in instructing on the emergency doctrine was not prejudicial to plaintiff. We consider this question in Division II hereof.. Defendants do assert, however, that the issue of emergency was properly presented to the jury. Harris v. Clark, supra, 251 Iowa 807, 103 N.W.2d 215, is the only authority cited in support of this position. No attempt is made to distinguish the precedents plaintiff cites.

We do not regard Harris v. Clark as factually in point. There defendant collided with the rear of plaintiff's car as it stopped suddenly, without giving an adequate signal, to allow a preceding motorist to turn into a driveway. We approved an instruction on the question whether defendant was confronted with an emergency not of his own making. Precedents are cited for the propositions that evidence of a motorist's negligence does not make such an instruction improper and the questions whether an emergency existed and a person was without fault in bringing it about are ordinarily for the jury.

█ We adhere to what is said in Harris v. Clark. An instruction on sudden emergency is obviously inapplicable and unnecessary where there is no evidence the person confronted with the emergency was negligent in the violation of a statute or otherwise. See annotation, 80 A. L. R.2d 5, 19, 20. The

defense of emergency was interposed here as a legal excuse for defendant's alleged negligence. If there were no evidence of such negligence the question of emergency would not be reached. Although the existence of an emergency and whether it was brought about without fault of the person claiming the benefit thereof are ordinarily jury questions, there should be some evidence to support an affirmative finding on these questions.

II. The trial court left to the jury the question whether plaintiff's status in defendants' car was such that she was entitled to recover for the driver's negligence (upon proof of the other elements of her case) notwithstanding our guest statute, Code section 321.494. This provision limits liability of the owner or operator of a motor vehicle to a passenger, or person riding in it as a guest or by invitation and not for hire, to damage caused by the driver's being under the influence of intoxicating liquor or by his reckless operation of the vehicle.

We have held several times, commencing with Knutson v. Lurie, 217 Iowa 192, 195, 251 N.W. 147, 149, that one who rides in an automobile "for the definite and tangible benefit of the owner or operator" or "for the mutual, definite, and tangible benefit of the owner or operator on the one hand, and of himself on the other" is not a guest within the meaning of section 321.494 and he may recover for negligence of the driver. One who claims this statute is not applicable has the burden to prove his status was other than a guest. Ritter v. Dexter, 250 Iowa 830, 833, 95 N.W.2d 280, 281.

Plaintiff objected to the instructions which left to the jury the question whether she was other than a guest on the ground, in substance, the evidence on the point was undisputed and the jury should have been told as a matter of law the guest statute did not apply. This is the basis for plaintiff's second assigned error. Defendants argue they were entitled to a directed verdict on the ground plaintiff was a guest within the meaning of 321.494. We hold the question of plaintiff's status as a guest or otherwise was properly left to the jury.

We summarize the evidence bearing on the question of plaintiff's status. Plaintiff and her husband and defendant Collis Moore and his wife were invited to the wedding of a son of a

mutual friend. About a week before the collision Mrs. Moore called plaintiff and asked what she and her husband were going to do about getting a wedding gift for the couple. Another lady had previously called plaintiff about the same matter. Plaintiff had planned to get a piece of silverware in Atlantic as a gift. Mrs. Moore told plaintiff she and Linda had to go to Omaha and asked plaintiff to go with them so they could select the gift there. Plaintiff replied, "If you are going anyway why don't you buy the gift? We'd be happy to go in with you on it." Mrs. Moore said, "No she wouldn't do it that way. She wanted me [plaintiff] to go along and help pick it out and decide on its cost." After some urging plaintiff consented to go. It was on the trip to Omaha that the collision occurred.

Mrs. Moore testifies that before she called plaintiff she and her husband discussed the matter of a wedding gift and decided they would go in with someone to purchase it. "It's economically more feasible to go in with someone else than to try to do it alone. * * * I was speaking for myself and Mr. Moore when I was talking [to plaintiff]. I'm sure she was speaking for herself and Mr. Winter." The two women had in mind getting silverware or china in the pattern selected by the young couple. Neither the silverware nor china was available in Villisca. Mrs. Moore also says, "I did not want to pick out the gift alone. It would have helped to have plaintiff along to determine how much we were going to spend. When we agreed on something we'd purchase and give it jointly. Our four names would be on the card." An incidental matter plaintiff had in mind was to have her glasses straightened in Omaha if there was time and opportunity. The gift was finally purchased by Linda and plaintiff's daughter while their mothers were in the hospital with injuries from the collision.

Nothing is claimed for the fact Linda, rather than Mr. or Mrs. Moore, was driving the car at the time of the collision. It appears Mr. Moore would benefit to the same extent as Mrs. Moore from furnishing plaintiff transportation to Omaha.

On the question whether plaintiff was riding in defendants' car for the definite and tangible benefit of the owner or for the mutual, definite and tangible benefit of the owner and plaintiff,

her case is fully as strong as some in which we have held such a question was for the jury. The case is much like Bodaken v. Logan, 254 Iowa 230, 117 N.W.2d 470, where plaintiff went with the driver at the latter's request to help her pick out some uniforms to wear in school. The accident occurred before the girls reached their intended destination. The opinion briefly reviews most of our applicable decisions.

Ritter v. Dexter, supra, 250 Iowa 830, 95 N.W.2d 280, approved in Bodaken v. Logan, supra, is a similar case where plaintiff rode in defendant's car at the operator's request to help him look for stolen fender skirts. Among the precedents there cited is Kleinhesselink v. Porterfield, 76 S. D. 577, 83 N.W.2d 191, where a father drove his son from Iowa to a South Dakota cattle market, for advice in buying cattle. The father bought no cattle but the son bought some for himself. It was held the evidence supported the finding the guest statute was inapplicable. See also other precedents reviewed in Bodaken v. Logan and Ritter v. Dexter, both supra.

■ Plaintiff's argument the jury should have been instructed as a matter of law she was not within the guest statute is largely based on the claim the evidence on the point is undisputed. It is true the evidence is not greatly in dispute. However, even when the facts are not in dispute or contradicted, if reasonable minds might draw different inferences from them, the question is for the jury. Rule 344(f)17, Rules of Civil Procedure.

We have pointed out the burden was on plaintiff under her Count I to prove her status was other than a guest. Many recent decisions hold that in the absence of an admission by the adverse party, it is seldom that one who has the burden on an issue establishes his claim as a matter of law. Ruble v. Carr, 244 Iowa 990, 993, 994, 59 N.W.2d 228, 230, 231, and citations; Williams v. Stroh Plumbing & Electric, Inc., 250 Iowa 599, 601, 94 N.W.2d 750, 752, 82 A. L. R.2d 465, and citations.

While plaintiff's position is not entirely clear she seems to think the question of plaintiff's status as a guest or otherwise was for the court, rather than the jury, partly because each side contends the court should have ruled on the point as a

matter of law—plaintiff says she was not a guest and defendants say she was. But this position of the parties does not amount to a concession the court was at liberty to decide the question to the exclusion of the jury. It merely means each party claimed more than he or she was entitled to. The situation is analogous to the making of motions for directed verdict by both parties. This is not a concession the case should not be submitted to the jury or a waiver of the right to a jury verdict. Cole v. Hartford Accident & Indemnity Co., 242 Iowa 416, 421, 46 N.W.2d 811, 814, and citations.

III. Plaintiff's remaining assigned error challenges the directed verdict against her on her Count II, on the ground the evidence was insufficient to show the collision was caused by defendant-driver's reckless operation of the automobile. We are not persuaded the ruling was error. We think the evidence presents a case of negligence but falls short of showing recklessness.

We have held many times that reckless operation means the conduct of the operator must be more than negligent and must manifest a heedless disregard for, or indifference to, the rights of others. It implies no care, coupled with a heedless disregard for consequences. Christensen v. Sheldon, 245 Iowa 674, 684, 63 N.W.2d 892, 898, 48 A. L. R.2d 522, and citations. See also Nesci v. Willey, 247 Iowa 621, 624, 75 N.W.2d 257, 259; Fritz v. Wohler, 247 Iowa 1039, 1041, 78 N.W.2d 27, 28, and citations.

We have also pointed out several times that generally, to make a jury question on recklessness, there must be evidence the danger from the manner of operation was known to the driver and that he acted in entire disregard of it, or the danger was so obvious and apparent he must have used no care at all in failing to observe it. Schneider v. Parish, 242 Iowa 1147, 1152, 1153, 49 N.W.2d 535, 538. See also Fritz v. Wohler, supra, and citations; Schmitt v. Cutkomp, 248 Iowa 575, 578, 579, 81 N.W. 2d 662, 664. Some of our cases also say the conduct of the driver must be such that the occurrence of injury is probable rather than merely possible. Fritz v. Wohler and Schmitt v. Cutkomp, both supra; Wilcox v. Hilligas, 254 Iowa 204, 207, 117 N.W.2d 42, 44. Many of our precedents point out that error in judgment does not amount to recklessness.

We can find no substantial evidence defendant-driver's operation of the automobile manifested a heedless disregard for, or indifference to, the rights of others or a disregard for consequences. Nor do we find substantial evidence the car was operated with no care. There was no persistent course of conduct, nor evidence of protests at defendant's manner of driving. Her speed was not excessive.

Plaintiff's case is somewhat like, and no stronger than. Schneider v. Parish, supra, 242 Iowa 1147, 1154, 1155, 49 N.W. 2d 535, 539, and Christensen v. Sheldon, supra, 245 Iowa 674, 684, 685, 63 N.W.2d 892, 898, 899, 48 A. L. R. 2d 522.

The principal Iowa decisions plaintiff cites in support of this assigned error are McKlveen v. Townley, 230 Iowa 688, 299 N.W. 25, and Allbaugh v. Ashby, 226 Iowa 574, 284 N.W. 816. We think there are elements in these cases that are not present here. This is also generally true of the precedents plaintiff cites from other states.

For the error pointed out in Division I hereof the case must be—Reversed and remanded.

All JUSTICES concur except PETERSON, J., who takes no part.